[Civ. No. 6877. Fourth Dist. Dec. 13, 1962.]

NEWPORT BUILDING CORPORATION, Plaintiff and Respondent, v. THE CITY OF SANTA ANA, Defendant and Appellant.

John K. Colwell, City Attorney, and Bernard Lambert, Deputy City Attorney, for Defendant and Appellant.

Gillen & Scott and Bernard M. Avidan for Plaintiff and Respondent.

SHEPARD, J.—This is an appeal by defendant from a judgment in favor of plaintiff for refund of fees allegedly paid under coercion.

## FACTS

Plaintiff owned land in defendant city. It prepared and graded said land for subdivision purposes, subdivided it into tracts of residential building lots, and built thereon for purposes of sale, single family residences. Tract 3296 consisted of 97 lots. On May 3, 1954, defendant enacted chapter 3 of article IX, under the title "Subdivision regulations," in which chapter is provided a detailed set of regulations covering design, improvement, advisory agency and map preparation and approval procedure as is referred to in Business and Professions Code sections 11000 to 11709. See particularly section 9371 of the ordinance for payment to the city engineer of a fee of $25.00 plus $1.00 for each lot upon submission of the final map to the city engineer.

On January 16, 1956, to become effective 30 days thereafter, defendant adopted a new ordinance which asserts, in essence, that subdividing real property differs from other businesses, that it is a short term venture productive of large profits; that a license tax on such business must be imposed as a single fee computed on a lot basis; that residential subdivisions place a financial burden on City and result in the then existing population paying for municipal services for such new subdivisions. Therefore, two new sections numbered 6200.55A and 9378 are added to the defendant's municipal code. They read,

"SECTION 6200.55A. Subdivision, Residential.

"The business of subdividing land for residential occupancy regardless of the number of lots into which the land is divided, a business license fee based upon the number of such lots, to partially cover the capital outlay for parks and recreation, and fire protection, at the per lot rate of $50.00

"The business license tax imposed by this Section is the same tax referred to in Section 9378."

"SECTION 9378. Business License Tax Payment.

"No final map shall be approved until the business license tax for each of the residential lots in said subdivision has been paid to the City of Santa Ana as provided for in Section 6200.55A."

It will be noted that section 9378 is a part of the municipal code chapter on "Subdivision Regulations" and section 9380 thereof provides,

"SECTION 9380. Necessity for Compliance.

"It shall be unlawful to sell, offer for sale or cause or permit to be sold or offered for sale any portion of any subdivision of real property, improved or unimproved, in the City of Santa Ana unless and until the requirements set out in this Chapter have been complied with."

At some date not shown by the record but after the effective date of said sections 6200.55A and 9378, plaintiff caused to be prepared and submitted to defendant's city engineering office, a tentative map, and actually performed the work of improvement required by defendant, including putting in paved streets, curbs, gutters, sidewalks, parkway trees, electricity, water and drainage. Plaintiff's attention was then called to section 6200.55A of the ordinance and a discussion was had between plaintiff's representative and the city engineer respecting the imposition of the fee. A reading of the whole testimony and discussions of counsel in the presence of the witness makes it clear that the witness was referring to the

fee provided by said section 6200.55A; that he objected to the city engineer on the imposition of the fee and was told that the ordinance (§§ 6200.55A and 9378) must prevail. Thereafter, plaintiff mailed its check for the amount of the fee ($4,850) and the map was approved. Plaintiff then made appropriate claim for refund of said sum so paid and, when the claim was rejected, sued for a refund. A similar situation is represented in the first count of the complaint, but that count was ruled out because of time lapse on claim filing so that we have before us only the second count of the complaint.

After a trial in which the sole witness was the President of plaintiff, the trial court found, in essence, that defendant, pursuant to said sections 6200.55A and 9378, required as a condition precedent to defendant's approval of plaintiff's final subdivision map, that plaintiff pay to defendant the sum of $4,850 as a business license or subdivision license fee to partially cover capital outlay for parks, recreation and fire protection; that the ordinance sections 6200.55A and 9378 are in conflict with the Subdivision Map Act and are void; that the plaintiff's payments were made involuntarily and under protest; that such payments "into the Park and Firehouse Acquisition and Construction Fund did not relate to design and improvement of the subdivision itself, but were a method by which funds could be raised to help meet the needs of an entire city; that the sum paid by plaintiff has been transferred to defendant's Capital Improvement Fund;" that the license fees were for regulatory as well as revenue purposes; that applicable administrative remedies were exhausted by plaintiff; that plaintiff, on April 14, 1958, made written claim to defendant for refund of said amount so paid, which claim was refused by defendant.

### REVENUE OR REGULATION

Defendant first contends that the license fee provided for by said section 6200.55A was solely for revenue purposes. It asserts that because the preliminary recitals of the ordinance declare that there are *large profits* in subdivisions and that residential subdivisions place a financial burden on the city, the "Councilmanic" intent in passing the ordinance is obviously to raise revenue. Just how the council determined that there were *large profits* in all subdivisions and that residential subdivisions all place a financial burden on the city we are unable to ascertain. The constant urgency of cities generally in annexing outlying residential subdivisions would appear inconsistent therewith.

In any event, the inclusion, in the same enactment, of new sections 6200.55A and 9378 lends evidentiary support to the court's finding. Peculiarly, nothing in the ordinances presented to the trial court directs the license fee at anything or anyone except the subdivision itself. Whether there are other ordinances which make the fee personal to some individual the record does not show. On its face it is directed at the subdivision itself rather than at some person engaged in a lawful business.

 As was said in *Kelber* v. *City of Upland*, 155 Cal.App. 2d 631, 638 [5-6] [318 P.2d 561] : "The purpose and intent of the Subdivision Map Act is to provide for the regulation and control of the design and improvement of a subdivision with a proper consideration of its relation to adjoining areas, and not to provide funds for the benefit of an entire city. [██ The authority to adopt local ordinances containing requirements supplementary to the Map Act is limited by the terms of the statute.

 "While the power of a city to adopt many regulations in connection with the matters covered by the statute may well be implied, even though not expressly stated, the power to require the payment of large fees or contributions for general city benefits as a condition of the approval of a map may not reasonably be implied, and it is entirely inconsistent with the language and apparent intent of the statute. The imposition of such fees as a condition for the approval of such a map not only bears no relation to the requirements indicated in the statute but would directly impede the realization of what appears to be the intent and meaning of the act. It follows that the fees here in question were illegally imposed and collected."

### BUSINESS LICENSE

Defendant next contends that its position as a charter city gave it the right to enforce the ordinance involved regardless of the provision of the Subdivision Map Act, citing *City of Los Angeles* v. *Rancho Homes, Inc.*, 40 Cal.2d 764 [256 P.2d 305].

 It is true that plaintiff as a charter city has broad powers in the imposition of taxes for revenue purposes and that a license tax may be levied for the privilege of carrying on a business. (*City of Los Angeles* v. *Rancho Homes, supra*; *In re Groves*, 54 Cal.2d 154 [4 Cal.Rptr. 844, 351 P.2d 1028] ; *City of Glendale* v. *Trondsen*, 48 Cal.2d 93 [308 P.2d 1].)

However, we are unable to agree that there are no limitations whatever. [██ The provisions of the state law cover

the whole subject of regulation of subdivision except for matters relating to design and improvement, the latter being expressly delegated to cities and counties. But defendant was not satisfied to confine its ordinances to design and improvement.. The State had already directed by Section 11529 that local ordinances might provide a proper and reasonable fee to be collected from each subdivider for the county surveyor or city engineer's. examination of maps involved. By its ordinance, Section 9371, defendant had provided for the engineer's fee. But in addition, the defendant next came forward with an ordinance attempting to impose another regulation, unrelated to design and improvement, as a prerequisite to the filing of a map. It quite clearly conflicts with the whole plan of the Subdivision Map Act.

### SEVERABILITY

Defendant next contends that even though the section (9378) of the ordinance is invalid, the provisions of section 6200.55A remain unaffected because the subdivision is a business and is legitimately subject to a business license tax. If the ordinance had been so worded as to cover plaintiff's whole operation of subdividing, improvement, construction and selling, as was done in the ordinance in the *Rancho Homes* case, *supra,* we could agree. Unfortunately, that was not done. The whole fee procedure in the defendant's ordinance is indelibly tied to a regulation whose field is already occupied by the Subdivision Map Act. While we can conceive of the work of subdivision being separately carried on for pay and therefore being classified as a business, that is only conditionally true here. While it is perfectly true that taxable activities are not necessarily confined to those which are profitable *(Union League Club* v. *Johnson,* 18 Cal.2d 275 [115 P.2d 425]), a business, in its ordinary sense, and in the same sense in which this ordinance apparently uses the term, is carried on *for* profit. As was said in *Cuzner* v. *California Club,* 155 Cal. 303, 311 [100 P. 868, 20 L.R.A. N.S. 1095], "The term 'business' as used in a law imposing a license-tax on businesses, trades, professions, and callings, ordinarily means a business in the trade or commercial sense, one carried on with a view to profit or livelihood."

But subdivision, as here referred to, involved only the preparatory expenditure through which plaintiff might ultimately attract the public to buy. Incidental only in plaintiff's operations, it did not here constitute plaintiff's business.

It constituted a useful part of plaintiff's whole business of subdividing and selling. As the ordinance is here worded, it is pointed at the individual lot and not at the lot owner. Perhaps some other section of defendant's ordinances imposed a personal liability. None in the record before us does so. We are unable to agree that the provisions are severable nor are we able to differentiate the principles involved from those present in *Kelber* v. *City of Upland, supra.*

PAYMENT UNDER COERCION

Next, defendant contends that plaintiff's payment was voluntary and not under protest and that therefore there can be no recovery.

■■■ The basic principle of the common law here involved was enunciated in the early case of *Brumagim* v. *Tillinghast,* 18 Cal. 265, 271 [19 Am.Dec. 176], "The illegality of the demand paid constitutes of itself no ground for relief. There must be, in addition, some compulsion or coercion attending its assertion, which controls the conduct of the party making the payment."

Since the decision in the *Brumagim* case the rigidity of the application of that rule has been somewhat relaxed. ■■■ In *Flynn* v. *City & County of San Francisco,* 18 Cal.2d 210, 216, 217 [115 P.2d 3], it is said, ". . . The character of the payments—voluntary or involuntary—is to be determined from the terms of the ordinance under which the taxes are imposed, the circumstances attendant upon payment and a consideration of the consequences which might follow upon nonpayment."

■■■ And in the same case, quoting from *Brumagim* v. *Tillinghast,* ". . . 'Among the instances of the relaxation of the strictness of the original common law rule is the case of payments constrained by business exigencies, that is payments of illegal charges or exactions under apprehension on the part of the payers of being stopped in their business if the money is not paid. It has been stated that the general rule with regard to duress of this character is that where, by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain, he may recover it.'" See also *City of Belmont* v. *Union Paving Co.,* 156 Cal.App.2d 214, 217-218 [1] [319 P.2d 353].)

In the case here at bar it must be noted that plaintiff, owning certain land, performed extensive improvements thereon in compliance with the Subdivision Map Act and defendant's ordinance in order to qualify a subdivision map of said land for approval by defendant. Plaintiff's real business and the only one from which any profit could be realized, was the sale of houses and lots in the subdivision. The subdivision work was merely a preparatory step to enable plaintiff to engage in the business of selling the houses. Both the Subdivision Map Act itself in section 11538 and defendant's "Subdivision Regulations" ordinance section 9380 prohibit any sales of subdivision lands until the final subdivision map and whose prior approval was necessary in any event before lawful recordation, was the city engineer. From the evidence, the trial court was entitled to conclude that defendant's city engineer refused to approve the final map until the fee of $50 per lot had been paid. Plaintiff was thus at an impasse with a large investment but no possible way to engage in the business for which the investment had been made unless he paid the fee in dispute. The trial court was justified in finding that this was coercion and that the payment was involuntary.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.