[Civ. No. 21887. First Dist., Div. Two. Mar. 2, 1965.]

SANTA CLARA COUNTY CONTRACTORS AND HOME-BUILDERS ASSOCIATION, Plaintiff and Respondent, v. CITY OF SANTA CLARA et al., Defendants and Appellants.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Joseph H. Redmon and Edwin J. Moore, City Attorneys, and M. Van Smith, Assistant City Attorney, for Defendants and Appellants.

Di Leonardo, Blake, Kelly, Aguilar & Leal and Michael di Leonardo for Plaintiff and Respondent.

BRAY, J.*—Defendants appeal from judgment of court without a jury, in favor of plaintiff, declaring invalid certain requirements of section 22, Santa Clara City Ordinance No. 1046,[1] and enjoining their enforcement.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]The title of this ordinance reads "An Ordinance Establishing Standards for the Subdivision or Development of Property; Defining Minimum Type and Quality of the Utilities and Public Service Facilities Required; Setting Forth the Extent of Such Improvements Chargeable to the City at Large; and Authorizing and Providing for the Collection of Charges for the Use of Previously Installed Facilities from Property Owners Benefited by Such Installations."

## QUESTIONS PRESENTED

1. Does plaintiff have standing to sue?

2. Is section 22 unconstitutional because of preemption of field by the Subdivision Map Act?

3. Is the fee provision severable from the other requirements of section 22?

## RECORD

Plaintiff sought declaratory relief against defendants who are the City of Santa Clara, a chartered city, its elected councilmen and its city manager, upon an amended complaint which alleged, in pertinent part, that it is a nonprofit California corporation, formed and existing, *inter alia,* "to take unified action upon matters of legislative or governmental action affecting the contracting, building, or construction industry, and to promote and protect the best interests of the public served by said industry" (attached to the complaint was a list of its members); that it was duly authorized to and does bring this action on behalf of all its members, in a representative capacity and for the benefit of each and every member; that section 22 of Ordinance No. 1046 of the City of Santa Clara is illegal, unconstitutional and void for the reasons hereinafter discussed; that defendants insist on compliance with the terms thereof. The complaint seeks a declaration of the rights of plaintiff, its members, and all others of the same class, and their legal relationships with defendants; that said ordinance section is void and asks that defendants be enjoined from enforcing it.

Defendants demurred generally. The demurrer was overruled. Defendants answered, denying the pertinent allegations of the complaint and affirmatively alleging that the complaint did not state facts to constitute a cause of action. At the trial, defendants moved to dismiss the action on the ground that plaintiff was not a real party in interest as required by section 367, Code of Civil Procedure.[2]

The motion was denied. Plaintiff's articles of incorporation and section 22 of the ordinance in question were introduced in evidence and oral testimony had.

---

[2]On the motion, plaintiff pointed out that upon the overruling of defendants' demurrer, defendants had sought a writ of mandamus and/or prohibition in this court to prohibit further hearing of the action raising the same legal question, and that on March 25, 1963, this court had denied the petition.

The court made findings of fact and conclusions of law finding a judiciable controversy between plaintiff, its members and all subdividers of the same class who would be adversely affected by the enforcement of section 22, and defendants; that plaintiff is a real party in interest; that the requirements of section 22 are invalid, illegal, unconstitutional, null and void; and that defendants should be permanently enjoined from enforcing its provisions. Judgment was entered accordingly.

1. Plaintiff's standing to sue.

Defendants contend that plaintiff corporation is not a member of the class for whose benefit the action is maintained because there is no evidence that either it or its members engage in the business of subdividing property. The bylaws reveal that active membership is open to anyone whose principal business is building construction or general contracting, including homebuilders.

As will hereinafter appear, it is the fee requirement section of 22 that is under attack. Subdivision (a) requires a fee from every "subdivider or builder or developer or owner" of land in Santa Clara desiring approval of a map or a building permit. As plaintiff's membership includes homebuilders who would be affected by the necessity of paying a fee to obtain a building permit, it is immaterial that no evidence was offered that plaintiff's membership includes subdividers.

Defendants also contend that as plaintiff does not itself engage in building, it is not a party in interest for purposes of suit. Section 382, Code of Civil Procedure, provides in pertinent part: "Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants; . . . and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

In *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158], an incorporated labor union representing members of a city fire department sought to restrain the city from discriminating against its members. The trial court concluded that as a matter of law the union had no capacity to sue. In holding that the conclusion that the plaintiff had no standing to sue was erroneous, the reviewing court, at page 284, stated, ". . . the

plain meaning of both the Labor Code and the Government Code provisions hereinabove alluded to [Lab. Code, §§ 1960-1963, Gov. Code, §§ 3500-3509] is that unions such as plaintiff may be organized for the sole purpose of representing their members. An action at law on behalf of such members is one form of such representation. Plaintiff is incorporated. Its members are all employees of the fire department and as such have a clear beneficial interest in the subject matter of the complaint. Its interest is joint with theirs. The entire action is one such as is contemplated by Code of Civil Procedure section 382 and (if injunction be equated with mandate) under section 1086 as well." While plaintiff in the action at bar is not a labor union, and, therefore does not have the benefit of the code provisions relating to labor unions, it is a professional association, incorporated, organized for the purpose of representing its members, who have a beneficial interest in the subject matter of the complaint, and whose members authorized it to bring the action. "A representative suit is not permissible unless there is a community of interest between the members of the class with respect to the questions of law and fact involved (*Parker* v. *Bowron*, 40 Cal.2d 344, 352 [254 P.2d 6]; *Weaver* v. *Pasadena Tournament of Roses Assn.*, 32 Cal.2d 833, 837-838 [198 P.2d 514]), and a determination of whether a particular plaintiff can fairly protect the rights of the group he purports to represent is necessarily dependent upon the facts and circumstances of each case." (*Bowles* v. *Superior Court* (1955) 44 Cal.2d 574, 587 [283 P.2d 704].)

In *Jellen* v. *O'Brien* (1928) 89 Cal.App. 505 [264 P. 1115], the plaintiff sued to obtain a permanent injunction restraining the chief of police from enforcing a "licensing" ordinance against the plaintiff or any member of the voluntary San Francisco Furniture Dealers Association. The trial court granted the relief sought. Two years later, the court made an order amending its original decree by striking therefrom all reference to the San Francisco Furniture Dealers Association, thereby making the injunction applicable to the plaintiff only. Plaintiff Jellen, as secretary and representative of the association and its members, appealed. The respondent urged that the members of the association in question, other than Jellen, were improperly joined as parties plaintiff, and that the court exceeded its jurisdiction in granting them a permanent injunction. The court, in reversing the order appealed from,

held that the plaintiff came squarely within that provision of section 382 which permits a party to sue for the benefit of many where the question is one of a common or general interest of many persons.

 If a voluntary association were held to be a proper party plaintiff, then plaintiff corporation, which has the right to sue or be sued (Corp. Code, § 9501), should be a proper party plaintiff.

*Parker* v. *Bowron* (1953) 40 Cal.2d 344 [254 P.2d 6], was a mandamus proceeding to compel city officials to fix a salary for all city employees in certain classifications at least equal to prevailing scale for similar employment in private industry. Parker sued individually and as a member and secretary-treasurer of the Council of Federated Municipal Crafts, a voluntary unincorporated association of unincorporated labor organizations. Under the then existing rule, an unincorporated association could not sue or be sued as an entity, and all such action had to be taken by or against the individual members. Parker was held to have no beneficial interest in the subject matter as there was no allegation that he was himself a city employee, and his right of representation was alleged to be his position as secretary-treasurer of an *unincorporated* association which claimed to have a membership consisting of city employees. Parker could not give himself standing to sue by purporting to represent a class of which he was not a member.

The court further held that even assuming the unions which were affiliated together in membership in the council were the petitioners (they were not so alleged, Parker being the only petitioner), "No facts are alleged which show any right or interest of the unions in the action sought to be commanded." (P. 354.)

In *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) *supra,* 60 Cal.2d 276, 284 (fn. 7), the court said: "The *Parker* decision logically followed from the then existing rule that an unincorporated association may not sue or be sued as an entity, . . . Such rule has since been relaxed in regard to unincorporated labor unions." Clearly the ruling in *Parker* does not apply to the situation in the case at bench.

Another case relied upon by defendant is *California Gas. Retailers* v. *Regal Petroleum Corp.* (1958) 50 Cal.2d 844 [330 P.2d 778]. There the plaintiff sought an injunction to enjoin service station operators from engaging in a give-away program alleged to constitute a lottery. The plaintiff was a

corporation consisting of members distributing the products of the major and certain other oil companies. The complaint did not allege that the plaintiff was authorized to bring suit on behalf of its members (p. 849). The court held that there was not such a well-defined community of interest in the questions of law and fact involved as to permit the plaintiff corporation having members engaged in the operation of gasoline stations to bring a representative suit, in view of the fact that the plaintiff was complaining of inability of its members to pay dues and assessments, while the members were alleged to have been injured by the defendants through loss of business. The defect was cured by amending the complaint so that the pleadings would conform to the proof by including an individual member of the corporation as a party plaintiff, who was therefore "similarly situated" with the other members. The court based its ruling on *Parker* v. *Bowron, supra,* which was distinguished in *Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* which latter authority supports the trial court's action in the case at bench, in upholding plaintiff's right to sue.

2. Section 22.

The purpose of Ordinance No. 1046 as stated therein is ". . . to supplement the Subdivision Map Act of the State of California, to implement the provisions of the City Charter and related City Ordinances, raise revenue for municipal purposes and to define and establish the requirements, policies and procedures for the subdivision and development of property whether developed in whole or in part, or at all, prior to, concurrent with or after the effective date of the ordinance, in order to: 1. Insure conformity to the Subdivision Map Act and the Real Estate Act of the State of California; . . ."

Section 22 provides: "(a) As a condition precedent to the approval of a final map and issuance of any building permit for the erection or construction of any single family residence, duplex or multi-family structure in any district, other than on land having previously been charged with the deposits for the particular use proposed hereinafter set forth under Ordinance No. 631, Ordinance No. 705, Ordinance No. 868 and/or Section 22 of this ordinance, all ordinances of the City of Santa Clara, the subdivider or builder or developer or owner thereof shall deposit with the City the sum of Twenty-Five Dollars ($25.00) for each dwelling unit or apartment unit

proposed to be constructed within any area. The total deposit shall not exceed One Hundred Dollars ($100.00) for each one-fifth (1/5) acre, or part thereof.

"(b) As a condition precedent to the issuance of any use or other permit, including a building permit, allowing the establishment of any trailer court, the owner or developer of such trailer court shall deposit with the City the sum of Eight and 50/100's Dollars ($8.50) for each trailer space contained, or to be contained, in said proposed trailer court, or said addition thereto or extension thereof.

"(c) *All of the sums* deposited with the City, pursuant to this Ordinance, *shall be deposited in the Capital Outlay Recreation Fund* established by Ordinance No. 631, Ordinances of the City of Santa Clara, as amended by Ordinance No. 705 and Ordinance No. 868, and *shall be used for the purpose set forth in said Ordinance No. 631, as amended.* [Italics added.]

"(d) The City may waive payment of said fees listed above in the event the subdivider or developer irrevocably dedicates land for recreational purposes which land and the location and extent thereof are suitable and satisfactory and acceptable to the City Council."

The trial court held section 22 invalid because in conflict with the provisions and purposes of the State Subdivision Map Act (Bus. & Prof. Code, § 11500 et seq.) ; more burdensome and restrictive than the requirements of that act; the fees required were for the purpose of creating a Capital Outlay Recreational Fund for the future needs of the city for park and playground sites, and for the benefit of the citizenry at large.

Section 11525 of the Subdivision Map Act provides in pertinent part: *"Control of the design and improvement of subdivisions* is vested in the governing bodies of cities and of counties but, in all matters concerning such design and improvement, any decision by a governing body is subject to review as to its reasonableness by the superior court in and for the county in which the land is situated. Every county and city shall adopt an ordinance regulating and controlling the design and improvement of subdivisions." (Italics added.)

"The purpose and intent of the Subdivision Map Act is to provide for the regulation and control of the design and improvement of a subdivision with a proper consideration of its relation to adjoining areas, and not to provide funds for the benefit of an entire city. The authority to adopt local

ordinances containing requirements supplementary to the Map Act is limited by the terms of the statute. ■ While the power of a city to adopt many regulations in connection with the matters covered by the statute may well be implied, even though not expressly stated, the power to require the payment of large fees or contributions for general city benefits as a condition of the approval of a map may not reasonably be implied, and it is entirely inconsistent with the language and apparent intent of the statute. The imposition of such fees as a condition for the approval of such a map not only bears no relation to the requirements indicated in the statute but would directly impede the realization of what appears to be the intent and meaning of the act. It follows that the fees here in question were illegally imposed and collected.'' (*Kelber* v. *City of Upland* (1957) 155 Cal.App.2d 631, 638 [318 P.2d 561].)

Thus, the question to be determined is whether the purpose of section 22 of the ordinance is to provide for ''the regulation and control of the design and improvement of a subdivision'' by a municipality, or whether its purpose is that a city may use the Map Act to provide funds for the city's benefit.

■ The city is expressly given the power by sections 11529 and 11543.5, Business and Professions Code, to require payment of a fee as a condition of approval of a final subdivision map, but such fee can only be for two purposes: 1) For ''such detailed examination of final maps and such field check, if any, as may be necessary'' (§ 11529) for the city engineer to make the certificate required by section 11593; and 2) ''for purposes of defraying the actual or estimated costs of constructing planned drainage facilities for the removal of surface and storm waters from local or neighborhood drainage areas'' (§ 11543.5).[3]

An examination of section 22 clearly shows that the fee provided therein is for neither of these purposes. The fees collected pursuant to that section are to be deposited in the Capital Outlay Recreational Fund, established by Ordinance No. 631, and to be used for the purpose set forth in said ordinance. That ordinance states that ''the money in said fund shall only be used for the acquisition of recreational equipment and lands and for capital outlays for recreational purposes.''

The ordinance in question here is similar to that in *Kelber*

---

[3]Unless otherwise noted, all statute references are to the Business and Professions Code.

v. *City of Upland, supra,* which ordinance was there held invalid. In that case, the plaintiff sued to recover a refund of certain subdivision fees required by the city as a condition for its approval of final subdivision maps. The defendant was a city of the sixth class (appellant at bench is a chartered city). Involved was the validity of two amendments to the city's subdivision control ordinance, one of which provided that at the time of the approval of the final map of any subdivision, there be paid to the city as a fee for such approval the sum of $30 per lot for each lot in said subdivision, said fee to be placed in a fund designated as Park and School Site Fund. The funds derived from said fees were to be used and expended solely for the purpose of acquiring park and school sites in the City of Upland. The second amendment provided that in lieu of the construction of drainage structures outside the subdivision, the subdivider pay into a Subdivision Drainage Fund a fee of $99.07 per acre for such residence property as was involved. The plaintiff, as a condition precedent to the granting of his application and the approval of his map, paid $1,440 for the Park and School Site Fund and $1,500 for the Subdivision Drainage Fund. After the plaintiff subdivided, he made written demand for repayment and refund to him of the $2,940 paid, which demand was refused by the city. The trial court held that the provisions of the two ordinances requiring the payment of said sums, as a condition precedent to the approval of the subdivision map, were void; that the provisions of the ordinances were in conflict with the provisions of the Subdivision Map Act; and ordered the return of the sums paid. On appeal, the defendants contended (similarly to the contentions in the instant case) that the Subdivision Map Act did not fully occupy the field of subdivision control; that a city, as a condition precedent to the approval of a subdivision map, has the authority to adopt and enforce reasonable requirements which are not specifically set forth in the Map Act; and has authority to require the payment of fees in lieu of a dedication of land or the making of certain improvements.

The court held: "All of the references to local ordinances in the Subdivision Map Act relate to a local ordinance as defined in the statute, and to the design and improvement of subdivisions which are also defined in the statute. An intent rather clearly appears to limit, by these definitions, the authority of such a city to adopt local ordinances regulating subdivisions." (P. 637.)

"The provisions here in question are not local ordinances regulating the design and improvement of a subdivision, as those terms are defined in the act. It rather clearly appears that these fee provisions are fund raising methods for the purpose of helping to meet the future needs of the entire city for park and school sites and drainage facilities, and that they are not reasonable requirements for the design and improvement of the subdivision itself. It seems obvious that this fund raising method is not related to the needs of this particular subdivision or to the matter of making proper connections between this subdivision and the adjoining area; that it is not reasonably required by the type and use of the subdivision as related to the character of local and neighborhood planning and traffic conditions; and that it is inconsistent with and conflicts with the provisions of the Subdivision Map Act which set forth the conditions and requirements necessary for obtaining an approval of the map.

"The purpose and intent of the Subdivision Map Act is to provide for the regulation and control of the design and improvement of a subdivision with a proper consideration of its relation to adjoining areas, and not to provide funds for the benefit of an entire city. The authority to adopt local ordinances containing requirements supplementary to the Map Act is limited by the terms of the statute. While the power of a city to adopt many regulations in connection with the matters covered by the statute may well be implied, even though not expressly stated, the power to require the payment of large fees or contributions for general city benefits as a condition of the approval of a map may not reasonably be implied, and it is entirely inconsistent with the language and apparent intent of the statute. The imposition of such fees as a condition for the approval of such a map not only bears no relation to the requirements indicated in the statute but would directly impede the realization of what appears to be the intent and meaning of the act. It follows that the fees here in question were illegally imposed and collected." (P. 638.) The appellants' petition for hearing by the Supreme Court was denied.

█ The language of the court cited above indicates that the imposition of the fees required by the ordinance in our case is contrary to the terms of the Subdivision Map Act. The fact that the defendant there was a city of the sixth class, while Santa Clara is a charter city, is of no consequence.

█ "A charter provision or municipal ordinance is in con-

flict with the general law, within the contemplation of the rule as to ascendancy of the general law in nonmunicipal matters, if the general law occupies the entire field and leaves no room for local regulation. And a charter provision that imposes a more burdensome condition on the right in question than that imposed by the general law is in conflict therewith.'' (34 Cal.Jur.2d, § 160, p. 741; see 3 Witkin, Summary of Cal. Law (1960), p. 1973.) ■ The statement in section 1, Ordinance No. 1046, that the ordinance is to raise revenue for municipal purposes, is further indication that the money is to be spent for citywide purposes and not in direct relation to the property upon which the fee is levied.

In *Pratt* v. *Adams* (1964) 229 Cal.App.2d 602, 605-606 [40 Cal.Rptr. 505], the court stated : ''The Subdivision Map Act and the ordinances passed in conformity with it have several salutary purposes, such as : to regulate and control the design and improvement of subdivisions, with proper consideration for their relation to adjoining areas. . . .''

In *Wine* v. *Council of City of Los Angeles* (1960) 177 Cal. App.2d 157, 170 [2 Cal.Rptr. 94], the court stated that the proposed condition that the subdividers pay an additional sewerage fee into the general sewer fund was not within the control of the city council as either a part of the design or as an improvement of the subdivision, citing with approval *Kelber, supra.*

In *Newport Bldg. Corp.* v. *City of Santa Ana* (1962) 210 Cal.App.2d 771 [26 Cal.Rptr. 797], the defendant city adopted an ordinance creating a business license tax on a subdivider based on a fee computed at $50 per lot. The ordinance provided that no final map should be approved until the business license tax for each of the residential lots in a subdivision had been paid. The plaintiff sued to recover the fee which he had paid in order to have a subdivision map approved. The trial court found that the ordinance requiring the payment of the fee, called a business license tax, was in conflict with the Subdivision Map Act and was void ; that payments into the Park and Firehouse Acquisition and Construction Fund did not relate to design and improvement of the subdivision itself, but were a method by which funds could be raised to help meet the needs of an entire city ; and that the license fees were for regulatory as well as revenue purposes, etc. The city appealed. The court, in affirming the judgment, quoted the passage cited above from *Kelber,* and continued, at pages 776-777, ''De-

fendant next contends that its position as a charter city gave it the right to enforce the ordinance involved regardless of the provision of the Subdivision Map Act, . . .

"It is true that plaintiff as a charter city has broad powers in the imposition of taxes for revenue purposes and that a license tax may be levied for the privilege of carrying on a business. [Citations.]

"However, we are unable to agree that there are no limitations whatever. The provisions of the state law cover the whole subject of regulation of subdivision except for matters relating to design and improvement, the latter being expressly delegated to cities and counties. But defendant was not satisfied to confine its ordinances to design and improvement. The State had already directed by Section 11529 that local ordinances might provide a proper and reasonable fee to be collected from each subdivider for the county surveyor or city engineer's examination of maps involved. By its ordinance, Section 9371, defendant had provided for the engineer's fee. But in addition, the defendant next came forward with an ordinance attempting to impose another regulation, unrelated to design and improvement, as a prerequisite to the filing of a map. It quite clearly conflicts with the whole plan of the Subdivision Map Act."

Defendants argue that section 22 reveals an intention to levy a tax for revenue purposes upon all residential construction whether upon subdivided or unsubdivided property. Defendants cite a recent opinion of the Attorney General, No. 64/316, concerning an amendment to the Modesto Municipal Code, whose stated purpose is to provide revenue for the purpose of planning, acquiring and improving and expanding public parks, playgrounds and recreation facilities. It requires every person constructing a dwelling unit at the time of obtaining a building permit, to pay a minimum of $15 for each dwelling of not more than one bedroom, plus $5 for each additional bedroom, with a maximum imposition of $30.[4] The Attorney General opines that the amendment is a valid one. Without discussing the correctness of the opinion, it should be noted that it specifically distinguishes the enactment in question from the ordinances in *Kelber* v. *City of Upland, supra,* and *Newport Bldg. Corp.* v. *City of Santa Ana, supra,* in that the latter ordinances conflict with the Subdivision Map Act be-

---

[4]Modesto Municipal Code, sections 8-2.701-8-2.707.

cause they place the tax or fee on the approval of the subdivision map and the issuance of the building permit, whereas the former placed the tax or fee upon the construction of the dwelling unit, collecting it at the time the building permit is secured. Thus, the Attorney General has recognized the invalidity of an ordinance, as here, attaching a fee for revenue purposes to the approval of a subdivision map and the issuance of a building permit. ▮ As pointed out in *Kelber, supra,* and *Newport Bldg. Corp., supra,* a municipality may not use the Subdivision Map Act for general revenue producing purposes. Section 22, subdivision (a), requires the payment of the fee as a condition precedent to the approval of a final map AND issuance of any building permit. *Kelber, supra,* and *Newport, supra,* preclude such a levy for general city benefits as a condition precedent to map approval.

*Cramer* v. *City of San Diego* (1958) 164 Cal.App.2d 168 [330 P.2d 235], cited by defendants, upholding the validity of charter provisions of the city, of ordinances enacted thereunder, and of a resolution prescribing rules of interpretation and procedure, concerning charges for sewer services and creating a sewer revenue fund which shall be used only for extending, constructing, reconstructing or improving the sewer system or parts thereof, is not in point as the court held that what was involved was purely a municipal affair and therefore the city was not subject to general law concerning it. ▮ In our case, we are dealing with a subject which is not purely a municipal affair, but one of statewide concern in which the state has occupied the field.

*Associated Homebuilders of the Greater East Bay, Inc.* v. *City of Livermore* (1961) 56 Cal.2d 847 [17 Cal.Rptr. 5, 366 P.2d 448], likewise is not in point. It held that the power to levy sewer connection charges for revenue purposes was expressly granted general law cities by section 5471, Health and Safety Code.

Involved in *Longridge Estates* v. *City of Los Angeles* (1960) 183 Cal.App.2d 533 [6 Cal.Rptr. 900], was a City of Los Angeles ordinance which required that an outlet sewer charge be paid before a subdivision map could be recorded. The court held that the imposition of such a charge was a proper exercise of municipal powers which "The Subdivision Map Act does not preclude, but does clearly approve local ordinances relating to matters covered by that Act" (p. 539), because the outlet sewer charge "did not relate to the contents of the sub-

division map in the sense of requiring that plaintiffs put something into the map or remove something from it, but related rather to fixing the time when they were to do something required by . . ." the Municipal Code section providing for the outlet sewer charge (p. 538). "No cogent argument is advanced in opposition to this time being fixed for payment of the charges made. . . ." (P. 538.) The court further pointed out that in enacting the ordinance, the city was acting within its police powers in the interest of public health, and as an incident to constructing and maintaining streets. The reasoning in *Longridge* cannot apply to the facts in the case at bench.

Defendants call attention to Ordinance No. 705, which requires the deposit of $25 in the Capital Outlay Recreational Fund for each dwelling unit to be constructed upon a subdivided lot, such deposit to be paid upon approval of a subdivision map showing the planned construction, or upon the issuance of a building permit therefor, whichever date is earliest; and also to Ordinance No. 868, which requires each builder, developer or owner to deposit in the above mentioned fund $25 for each dwelling unit prior to the issuance of a building permit for such construction, and also requires a deposit of $8.50 for each trailer court space prior to the issuance of any permit allowing the establishment of a trailer court. Defendants then seem to contend that because section 22 eliminates from its application any land previously charged with the deposits required under Ordinances Nos. 705 and 868, that in some way the legality of section 22 is thereby established. The logic of this contention is difficult to understand. These other ordinances in no way lessen or avoid the fact, as we have hereinbefore shown, that the provisions of section 22 conflict with the provisions of the Subdivision Map Act.

3. Fee provisions not severable.

Mr. Carmichael, Superintendent of Parks and Recreation, City of Santa Clara, testified that money collected under section 22 was spent for the purchase of land, and in the case of improvements, for "improvements of a permanent nature, major structures, a recreational building, a swimming pool, parking facilities, recreational equipment permanently affixed to the ground, . . . and the like." There was no contention that the money collected was used only in connection with the development of the residential area or trailer court which paid the fees.

While subdivision (b) of section 22 does not provide for a subdivision map as such, it does provide that the fee will be levied "for each trailer space contained, or to be contained, in said proposed trailer court. . . ." There is a marked similarity to levying a fee based upon subdivision lots and trailer spaces within a trailer court.

The question of severability of sections in a similar ordinance was discussed in *Newport, supra.* The court there, in answer to the contention that the fee provisions of the ordinance there in question were severable from the rest of the ordinance, stated: "If the ordinance had been so worded as to cover plaintiff's whole operation of subdividing, improvement, construction and selling, as was done in the ordinance in the *Rancho Homes* case, *supra* [40 Cal.2d 764 (256 P.2d 305)], we could agree. Unfortunately, that was not done. The whole fee procedure in the defendant's ordinance is indelibly tied to a regulation whose field is already occupied by the Subdivision Map Act." (210 Cal.App.2d 771, 777.)

The court concluded its discussion of severability by remarking, "We are unable to agree that the provisions are severable nor are we able to differentiate the principles involved from those present in *Kelber* v. *City of Upland, supra.*" (P. 778.)

The provisions of section 22, Ordinance No. 1046, likewise appear to be inextricably tied to subdividing. The trial court found the provisions to be interdependent and inseparable.

As the provisions of section 22 are inextricably bound in with the other provisions of Ordinance No. 1046, and inasmuch as the former are not provisions regulating the design and improvement of a subdivision, and as the state has preempted the field in all respects concerning subdivisions, except as to design and improvement, the ordinance is illegal and void.

Judgment affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 28, 1965. Burke, J., was of the opinion that the petition should be granted.