[Civ. No. 35898. Second Dist., Div. Three. Oct. 9, 1970.]

SCOL CORPORATION, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

### Counsel

Miller & Miller, Robert M. Miller and Robert L. Miller for Plaintiff and Appellant.

Jackson S. Niebrugge and Frank G. Brookings as Amici Curiae on behalf of Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, James A. Doherty, Assistant City Attorneys, and Thomas C. Bonaventura, Deputy City Attorney for Defendants and Respondents.

### Opinion

**COBEY, Acting P. J.**—Scol Corporation appeals from an order dismissing its action against the City of Los Angeles pursuant to Code of Civil Procedure section 581, subdivision 3, following the sustaining without leave to amend of the city's general demurrer to its complaint. Scol's action was for a refund of tax monies, for declarations of constructive trusts, and for other declaratory relief.

The decisive question presented by this appeal is whether Scol had standing to sue—that is, whether any cause of action existed in Scol against the city on the basis of the facts pled by Scol in its complaint. (See

*Parker* v. *Bowron*, 40 Cal.2d 344, 351 [254 P.2d 6]; *Klopstock* v. *Superior Court*, 17 Cal.2d 13, 19 [108 P.2d 906, 135 A.L.R. 318].)

According to Scol's complaint, Scol was a retailer of alcoholic beverages within the meaning of section 21.5.03.1 of the Los Angeles Municipal Code (Ordinance No. 136,900). In the first cause of action of its complaint Scol, on behalf of itself and all others similarly situated, sought a refund from the city of $320 of so-called tipplers' tax monies it paid on behalf of its customers on sales of alcoholic beverages Scol made to them in February 1969. The basis for the refund sought was the claim that the tax was unconstitutional and otherwise illegal. In its second cause of action Scol asked that it and all others similarly situated (retailers of alcoholic beverages) be declared constructive trustees of the tipplers' tax monies they collected under the compulsion of this allegedly illegal ordinance. In its third cause of action Scol asked that the city be declared a constructive trustee of the monies it obtained by means of this allegedly illegal tax for the benefit of Scol and all others similarly situated, or alternatively, for the benefit of all of their customers. In its fourth and final cause of action Scol asked that the ordinance be declared unconstitutional and void and its enforcement enjoined.

Since this appeal was taken, another division of this court has held, in a decision now final, that the ordinance in question was illegal because the state has preempted the field of alcoholic beverage taxation. (*Century Plaza Hotel Co.* v. *City of Los Angeles*, 7 Cal.App.3d 616, 622-626 [87 Cal.Rptr. 166].) The relief sought by means of the fourth cause of action has, therefore, become moot.

The issue remains whether the illegality of this tax has created any cause of action in Scol or others similarly situated for any of the further relief sought in Scol's complaint. We hold, for reasons which we will now set forth, that no cause of action was created in these retailers because Scol had no standing to sue either for itself, all others similarly situated, or on behalf of its customers. Its role was not that of a taxpayer, but that of a tax collector of this special use tax.[1] Further, the $320 payment that Scol made of its own funds in lieu of an equivalent amount in taxes collected from its customers was a voluntary payment. Likewise, Scol's payment to the city of the taxes collected by it from its customers was voluntary. Such voluntary payments do not give rise to a right of recovery.

[1]There is much authority in other jurisdictions, state and federal, holding that *only the taxpayer has standing to sue for a refund of tax monies.* (See, e.g., *Kesbec, Inc.* v. *McGoldrick*, 278 N.Y. 293 [16 N.E.2d 288, 119 A.L.R. 536]; *Furman University* v. *Livingston*, 244 S.C. 200 [136 S.E.2d 254]; *Twentieth Century Sporting Club* v. *United States*, 34 F.Supp. 1021 [92 Ct. Cl. 93].)

## SCOL WAS NOT A TAXPAYER

Scol contends that it has demonstrated an interest in the monies collected by it sufficient to give it standing to sue because as a retailer under the ordinance it was secondarily liable for the tax. Section 21.5.03.1, subsection (e) makes the purchaser the taxpayer, but this subsection imposes upon the retailer the duty of collecting the tax.[2]

In connection with this tax collection duty Scol calls our attention to the fact that section 21.5.04 of the Los Angeles Municipal Code incorporates therein the portion of the Revenue and Taxation Code entitled State Sales and Use Tax Law. (See Rev. & Tax. Code, § 6001.) Scol has neglected, however, to advise us that this incorporation expressly excludes section 6204 upon which Scol relies. This section states that the tax *to be collected* by the retailer constitutes debts owed by the retailer to the state, while Los Angeles Municipal Code section 21.5.09 provides instead that "The tax *so collected* by the retailer constitutes a debt owed by the retailer to the City."[3] (Italics added.)

In making the payment of $320 in March 1969, Scol did not pay taxes collected by it; rather, Scol paid the monetary equivalent of those taxes in order to avoid possible further liability for its default in the performance of its duty to collect those taxes. Moreover, the language of the aforementioned Los Angeles Municipal Code section 21.5.09 itself forecloses Scol's argument. This section reads in relevant part "[If] the tax is not collected by the retailer as aforesaid, the person upon whom such tax is imposed shall pay the same when due to the City Clerk. . . ."

Accordingly, we hold that Scol was not a "taxpayer" under this ordinance and, therefore, has no interest in the tax monies collected under the ordinance.

---

[2]This subsection reads in relevant part: "(e) The tax imposed under this section shall be paid by the person purchasing the alcoholic beverage, and shall be collected from him by the retailer and remitted to the City Clerk . . . ."

[3]Even if Revenue and Taxation Code section 6204 were applicable, it would not make Scol secondarily liable for the tax. As noted in *Brandtjen & Kluge* v. *Fincher,* 44 Cal.App.2d Supp. 939, 942-943 [111 P.2d 979], interpreting this section of the statute, "[These provisions] do not shift the direct burden of the tax from the purchaser to the retailer . . . [their] effect . . . is merely to hold the collection agent liable for his default in the performance of his duty as such." (Accord, *Bank of America* v. *State Bd. of Equal.,* 209 Cal.App.2d 780, 799 [26 Cal.Rptr. 348]; see also, *Beneficial Standard Life Ins. Co.* v. *State Board of Equalization,* 199 Cal.App.2d 18, 20-22 [18 Cal.Rptr. 432].)

The state use tax referred to in Revenue and Taxation Code section 6204 is a tax levied upon the purchaser. It is not a tax upon the retailer. The retailer is merely the tax collector for the state. (*Bank of America* v. *State Bd. of Equal.,* 209 Cal.App.2d 780, 793, 799 [26 Cal.Rptr. 348].)

## Scol's Payments Were Voluntary

Scol paid to the city both its own money ($320) and the taxes that it collected from its customers pursuant to the ordinance. Scol contends that both of these types of payment were involuntary and are, therefore, subject to refund.

■ We will consider first the payment by Scol to the city of $320. This was the amount of taxes Scol should have collected under the ordinance from its customers during the month of February 1969. Initially Scol claims that this payment to the city was an involuntary payment because it was made under protest and demand for refund. But, as noted in *Southern Service Co., Ltd.* v. *County of Los Angeles,* 15 Cal.2d 1, 8 [97 P.2d 963], "[T]he filing of a protest with a payment of illegal taxes otherwise voluntarily made does not deprive the payment of its voluntary character."

Scol asserts, however, that, independent of the protest, this payment was involuntary for two reasons. First, Scol contends that its failure to collect this amount from its customers resulted from the economic necessity of meeting out-of-city competition. Our colleague in dissent finds in such competitive circumstances *duress* sufficient to eliminate the voluntariness of Scol's payment. He cites two cases holding that taxes paid under duress are not paid voluntarily. (*Flynn* v. *San Francisco,* 18 Cal.2d 210 [115 P.2d 3]; *Newport Bldg. Corp.* v. *City of Santa Ana,* 210 Cal.App.2d 771 [26 Cal.Rptr. 797].) But Scol's assertion fails, and the cases cited by our colleague are inapplicable precisely because Scol did not pay *taxes* in making this payment.

Scol was not a taxpayer who was compelled to pay illegal taxes. Rather, Scol was a tax collector who was compelled to collect illegal taxes and was subject to possible penalties for failure to collect these taxes. As already noted, Scol's liability to the city was for this failure to collect these taxes and not for the taxes themselves. (Cf. *Brandtjen & Kluge* v. *Fincher, supra,* and cases noted therein.) Further, while the use tax at issue has been declared illegal in *Century Plaza Hotel Co.* v. *City of Los Angeles, supra,* 7 Cal.App.3d 616, the statutory scheme requiring retailers like Scol not only to collect the tax, but also making them liable for their failure to collect the tax was many years ago upheld against constitutional challenge by the highest court in the land. (See *Felt & Tarrant Mfg. Co.* v. *Gallagher,* 306 U.S. 62 [83 L.Ed. 488, 59 S.Ct. 376].)

Finally, it has been held that one who, mistakenly believing that he owns certain property, pays the taxes due thereon is a volunteer. (*McMillan* v. *O'Brien,* 219 Cal. 775, 780 [29 P.2d 183]; *Sierra Investment Corp.* v. *County of Sacramento,* 252 Cal.App.2d 339, 342 [60 Cal.Rptr. 519].)

Scol's deliberate and intentional payment to the city of the tax obligations of its customers with full knowledge of the facts and law is an a fortiori situation to these cases of innocent mistake.

Scol's second reason for its contention that its payment of the $320 of its own money was involuntary, that is, under duress, is that it made this payment in order to avoid the imposition of the sanctions contained in the ordinance for noncollection of the tax. If this motivation determined the voluntariness of tax payments, or of payments in lieu of the taxes a tax collector failed to collect, practically all such payments would have to be deemed involuntary. This cannot be the law. (See *Maxwell* v. *San Luis Obispo*, 71 Cal. 466 [12 P. 484].) We hold that Scol's payment of $320 of its own money to the city was a voluntary act on its part.[4]

■ We now turn to the payments of collected taxes that Scol made to the city. The foregoing discussion should have made clear that these payments, required by the ordinance, likewise were voluntary payments.

## CONCLUSION

■ Finally, Scol argues that denial of the pleas of itself and the remainder of the retailers for retention of and constructive trusteeship over the taxes collected by them will result in unjust enrichment of the city. It is true that these collections of an illegal tax may not in good conscience belong to the city. These monies may belong instead to the taxpayers, but this question is not before us. All that we decide herein is that the tax collectors, Scol and others similarily situated, have no interest in these monies and are therefore not entitled to them as trustees or otherwise. (See Civ. Code, § 2223; Pen. Code, § 424; cf. *Savage* v. *Mayer*, 33 Cal.2d 548, 551 [203 P.2d 9].)

The order of dismissal is affirmed.

Schweitzer, J., concurred.

ALLPORT, J.—I dissent.

It is noted that this matter is before us on appeal from an order of dismissal under Code of Civil Procedure section 581, subdivision 3, made following the sustaining of a demurrer without leave to amend. The ma-

---

[4]Scol may possibly posses a right of reimbursement against some of its customers for the $320—a point we do not decide. (See *Bank of America* v. *State Bd. of Equal.*, 209 Cal.App.2d 780, 793, 799-800 [26 Cal.Rptr. 348].)

jority opinion affirms holding in effect that the facts pled disclose, as a matter of law, that plaintiff, in paying the tax in question, was a volunteer and therefore has no legal right to seek reimbursement from the city. I cannot subscribe to the reasoning or the result of such a conclusion as to the portion of the tax absorbed and paid by this retailer.

While it is true that the ordinance in question, Los Angeles City Ordinance No. 136,900 (Los Angeles Municipal Code, § 21.5.03.1), attempts to levy the tax upon the consumer, the ordinance requires the retailer to collect and remit the amount due to the city clerk (subsec. (e)) and provides that the "tax so collected by the retailer constitutes a debt owed by the retailer to the city. . . ." (§ 21.5.09.) It is clear that, regardless of his designation as tax collector, the retailer has the obligation to pay the tax as well as to maintain the accounting procedures and perform the other administrative duties required by the terms of the ordinance at its own expense. In *Century Plaza Hotel Co.* v. *City of Los Angeles,* 7 Cal.App.3d 616, 622-623 [87 Cal.Rptr. 166], the court held, in declaring the ordinance in question invalid, that in effect it imposed a tax upon the sale as distinguished from the purchase of distilled spirits.

In the case at bar the complaint alleged in part as follows:

## "VII

That plaintiff at all times material herein has been engaged as a retailer of alcoholic beverages and has been at all times material an Alcoholic Beverage Tax Permittee No. 36312, within the City of Los Angeles, and accordingly became subject to the aforesaid ordinance.

## VIII

That in order to maintain its business and to not lose customers to competitors located nearby but not within the City of Los Angeles and thus not liable for the collection of said tax, plaintiff was forced to absorb said tax itself without raising its prices as they existed before the enactment of said ordinance, and plaintiff has thus paid the amount of said tax at its own expense and to its own injury, and no part of said payments have been collected from its customers.

## IX

That under the coercion and compulsion of the aforesaid ordinance plaintiff paid the amount of $320.00, under protest, on March 28, 1969, representing five percent of plaintiff's gross Alcoholic Beverage retail sales for the month of February, 1969, a copy of said protest included

herein and marked as Exhibit 'B' and incorporated herein as though set forth in full.

## X

That plaintiff duly presented a claim for refund of said payment, annexed herein as Exhibit 'C' and made a part hereof as though set forth in full and said claim for refund is deemed rejected inasmuch as more than ninety days have passed without action by the City of Los Angeles, and that plaintiff has thus exhausted all its administrative remedies in compliance with the Los Angeles City Charter sections 360 et seq.

## XI

That plaintiff alleged in the aforesaid Protest and Claim for Refund of said payment made under protest, and does herein reallege, that said tax is illegal, unconstitutional and void, for reasons to be set forth hereinbelow."

The protest of tax payment referred to in the complaint as Exhibit "B" states, "Said payment in its entirety is made involuntarily and under protest, and no payment would be made were it not for the coercion and duress of your office." (City Clerk)

In my opinion the allegations referred to above are sufficient to create a factual issue as to plaintiff's status to sue. It was not therefore a volunteer as a matter of law. In *Flynn* v. *City & County of San Francisco,* 18 Cal.2d 210 [115 P.2d 3], the court said at pages 216-217: "Since it is well established that a voluntary payment of taxes which have been illegally levied precludes the right of recovery, the next inquiry is whether or not the collections in question were effected by compulsion. The character of the payments—voluntary or involuntary—is to be determined from the terms of the ordinance under which the taxes are imposed, the circumstances attendant upon payment and a consideration of the consequences which might follow upon nonpayment. (*Vitale* v. *City of Los Angeles,* 13 Cal. App. (2d) 704, 706 [57 Pac. (2d) 993].) . . . 'That case [*Brumagin* v. *Tillinghast, supra,*] may have stated the rule of the common law at the time of its pronouncement in regard to voluntary payments; but the rule, as thus announced, has been greatly relaxed in more recent decisions in favor of the recovery of money improperly exacted by a defendant.' (21 R.C.L., p. 147.) "Among the instances of the relaxation of the strictness of the original common law rule is the case of payments constrained by business exigencies, that is payments of illegal charges or exactions under apprehension on the part of the payers of being stopped in their business if the money is not paid. *It has been stated that the general rule with regard to duress of this character is that where, by reason of the*

*peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain, he may recover it.*" (21 R.C.L., pp. 154, 155.) Upon this same subject we find the following statement in 20 California Jurisprudence, page 964: "The underlying principle (that money paid under compulsion may be recovered) is said to be that, by the performance of or threat to perform some unlawful act whereby plaintiff will suffer loss, the defendant has induced the plaintiff, under circumstances sufficient to control the action of a reasonable man, to pay money which he would not otherwise have paid." . . .' " (Italics added.) In *Newport Bldg. Corp.* v. *City of Santa Ana,* 210 Cal.App.2d 771 [26 Cal.Rptr. 797], the court said at page 778: "The basic principle of the common law here involved was enunciated in the early case of *Brumagin* v. *Tillinghast,* 18 Cal. 265, 271 [79 Am.Dec. 176], 'The illegality of the demand paid constitutes of itself no ground for relief. There must be, in addition, some compulsion or coercion attending its assertion, which controls the conduct of the party making the payment.' [¶] Since the decision in the *Brumagin* case the rigidity of the application of that rule has been somewhat relaxed. In *Flynn* v. *City & County of San Francisco,* 18 Cal.2d 210, 216, 217 [115 P.2d 3], it is said, '. . . The character of the payments—voluntary or involuntary—is to be determined from the terms of the ordinance under which the taxes are imposed, the circumstances attendant upon payment and a consideration of the consequences which might follow upon nonpayment.' " Both *Flynn* and *Newport Bldg. Corp.* distinguished if not impliedly disapproved of *Brumagin* v. *Tillinghast,* 18 Cal. 265, relied upon by the majority. In connection with the class nature of this action see *Daar* v. *Yellow Cab Co.,* 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732].

I find nothing in *Southern Service Co., Ltd.* v. *County of Los Angeles,* 15 Cal.2d 1 [97 P.2d 963], relied upon by the majority, which is either persuasive or compelling of a contrary view.

In the case at bar it may well be that, under the terms of the ordinance attempting to impose this tax, the circumstances attendant upon payment and a consideration of the consequences which might follow nonpayment, the collection in question was effected by compulsion.

I would reverse the order.

A petition for a rehearing was denied November 5, 1970. Allport, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied December 3, 1970. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.