[S. F. No. 13794. In Bank.—April 30, 1931.]

GEORGE H. YOUNG, Respondent, v. WILLIAM W. HOAGLAND et al., Defendants; WILLIAM W. HOAGLAND, Appellant.

William Kehoe for Appellant.

Corbet & Selby for Respondent.

CURTIS, J.—Up to November 30, 1923, the defendants, Hoagland, Prentice and Wilde, were, and for some years prior thereto had been, members of the board of five directors of the Humboldt Oil Company, a California corporation. Said board of directors in the preceding month of October had levied an assessment on the capital stock of said company designated as assessment No. 3. On said

thirtieth day of November a meeting of the stockholders was held and said board of directors was removed and a new board of directors was elected to replace the members of the board removed. On the same day the new board of directors organized and passed a resolution rescinding the act of the old board levying said assessment No. 3. The old board, however, maintained that the meeting of the stockholders was not legally called, and refused to surrender their offices to the newly elected board of directors. The old board remained in possession of the office and records and other property of the corporation including its corporate seal, and purported to carry on the business of the corporation. It refused to recognize the order of the new board rescinding and annulling said assessment, and proceeded to take the necessary steps to enforce the same, and in this connection it threatened to sell any and all stock of the corporation upon which the said assessment had not been paid. A number of the stockholders, not knowing whether the old board had been legally removed and the new one legally elected, and not wishing to run the risk of having their stock sold for delinquent assessment, paid the assessment thereon. It is not just clear as to whom all of these payments were made, but there is substantial evidence to show that these three defendants all participated in the collection of said assessments, and that practically all of the money collected in this manner was afterward paid by the person collecting the same to the defendant Hoagland, who kept it, together with other funds of the corporation, in a special account in his own name. The plaintiff herein was one of the stockholders paying said assessment to the defendants, and he also holds by assignment the claims of nineteen other stockholders who made similar payments. This action for money had and received was instituted by the plaintiff in a complaint consisting of twenty counts to recover the several amounts paid on said assessments by the plaintiff and his assignors. The trial court found in favor of the plaintiff upon all of said counts, with one exception, and gave judgment in favor of the plaintiff in the sum of $1031.20, and interest and costs. The new board of directors of the corporation, after their election as such, instituted in the name of the corporation an action against the defendants to recover the rec-

ords, corporate seal and other property belonging to the corporation. This action resulted in a final judgment in favor of the plaintiff therein. (*Humboldt Oil Co.* v. *Hoagland*, 70 Cal. App. 454 [233 Pac. 404].) The service of summons in the present action was had only upon the defendants Hoagland and Prentice. The defendant Wilde was not served with summons, apparently for the reason that his whereabouts could not be found. He did not appear in the action. From the judgment of the trial court the defendant Hoagland alone appealed.

Appellant's first contention is that the only amount paid by the plaintiff and his assignors to the appellant Hoagland was the sum of $20, and conceding that appellant is liable under any circumstances he is not liable for more than the sum of $20. It is true that there is no evidence that any of said stockholders made any payments direct to Hoagland except the one amount of $20. Hoagland was just prior to his removal as a director the president of the corporation. After his removal he, with Prentice and Wilde, refused to acknowledge the legality of their removal and these three, being a majority of the old board of directors, persisted in carrying on the business of the corporation. Through their joint efforts they succeeded in collecting from plaintiff and his assignors the various sums of money paid by them on said assessment. Under this state of facts it would seem that any payment made to one of said three members of the old board would be in law a payment to all three of them, and they would be jointly liable for the repayment of the same to the same extent that the one receiving the payment might be held liable. But in the case of Hoagland the evidence shows that he acted somewhat in the capacity of treasurer of the old board, and all payments received by any of the three on account of said assessments, with slight exceptions, were paid to Hoagland, who deposited them in a separate account in his own name. It thus appears that there was paid to Hoagland, either directly or indirectly, substantially the whole amount sued for. The exceptions mentioned consist of four small payments, amounting in all to $93.50, which the evidence shows were paid to Prentice. These payments, like all the others, were made as the result and in consequence of the joint efforts of said defendants to enforce payment

from the said stockholders of the several amounts claimed by defendants to be due on said assessment. As to their liability for the repayment of the same, the three defendants stand precisely upon the same footing. Hoagland is, therefore, responsible to all the stockholders making said payments to the same extent as if the payments had been made directly to him. Besides, in Hoagland's answer, he admits the receipt by him of all sums paid by the stockholders on said assessment, and claims that he expended the amount so collected in payment of claims owed by the corporation after the removal of the old board of directors. The evidence we think without question supports the implied finding of the trial court that the several sums of money sued for were paid to and received by the defendant Hoagland, as well as his co-defendants Prentice and Wilde.

It is next contended by the appellant that the several sums of money alleged to have been paid to defendants were voluntary payments made by the plaintiff and his assignors without protest and without coercion or legal compulsion. It is conceded by appellant that he and his co-defendants, after the meeting of the stockholders at which they were removed, retained possession of the office of the corporation, with its records and other property, and claimed to be the legal board of directors of said corporation and the only body legally qualified to transact the business of the corporation; that as a majority of said board, the three defendants, acting as said board of directors, threatened to sell the stock of plaintiff and his assignors unless said assessment No. 3 was paid; and that said stockholders in consequence and as a result of said threats on the part of said defendants, paid said assessments for the purpose of protecting their stock from such a sale. Appellant relies in support of his contention that these payments were voluntary and therefore cannot be recovered upon the case of *Brumagim* v. *Tillinghast,* 18 Cal. 265 [79 Am. Dec. 176]. That case may have stated the rule of the common law at the time of its pronouncement in regard to voluntary payments, but the rule, as thus announced, has been greatly relaxed in more recent decisions in favor of the recovery of money improperly exacted by a defendant. (21 R. C. L., p. 147.) "Among the instances of the relaxation of the strictness of the original common law rule is the case of payments con-

strained by business exigencies, that is payments of illegal charges or exactions under apprehension on the part of the payers of being stopped in their business if the money is not paid. ▮▮ It has been stated that the general rule with regard to duress of this character is that where, by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain, he may recover it." (21 R. C. L., pp. 154, 155.) Upon this same subject we find the following statement in 20 California Jurisprudence, page 964: "The underlying principle (that money paid under compulsion may be recovered) is said to be that, by the performance of or threat to perform some unlawful act whereby plaintiff will suffer loss, the defendant has induced the plaintiff, under circumstances sufficient to control the action of a reasonable man, to pay money which he would not otherwise have paid." It has frequently been held that payment of an illegal claim to a public officer upon the threat of the latter to seize and sell the property of the plaintiff under process held by said officer, is a payment made under compulsion and may be recovered back. "In such cases the parties cannot treat on equal terms, and the one on whom the demand is made is not bound to submit to the seizure of his property, and then seek his remedy for trespass, but he may pay the illegal demand and then recover it back." (21 R. C. L., p. 159.)

We find no instance in which this rule has been applied to payments illegally made by stockholders of a corporation similar to those in the present action. But in principle we can see no reason why the rule should not be so applied. Take, for instance, the case of the plaintiff in the present action. The stockholders were either compelled to pay the assessment or suffer their stock to be sold for the nonpayment thereof. In case they refused to pay the assessment, and it was finally held to be legal, they lost their stock. We question whether under such circumstances a reasonably prudent person would permit valuable stock owned by him to be thus jeopardized. Whether the stockholder acted as a reasonably prudent person would no doubt depend upon the facts and circumstances of each particular case. The

question, therefore, in most instances would be one for the trial court or the jury. In the present action we find that the defendants were insisting that the old board of directors was the only legal body entitled to represent the corporation; that the new board was without any legal standing whatever and had no authority to rescind the resolution calling for assessment No. 3. The defendants contend that they were honest and sincere in this belief, and in support of their belief in this respect they cite their action in contesting in the courts the claim of the new board of directors for control of the affairs of the corporation, and that they persisted in their convictions until the question of their status had been definitely determined by the appellate court. In the light of these facts it is hardly consistent for the defendants to now claim that the stockholders knew that the assessment was illegal, or even had reasonable grounds of believing it to be so, and, therefore, the payment of the same was voluntary on their part and cannot for that reason be recovered from the defendants. We are of the opinion that the evidence justified the conclusion of the trial court that the payments made by the stockholders were made under such circumstances as would entitle them to recover in this action the amounts so paid.

Finally the appellant makes the contention that as all the moneys collected by defendants from the stockholders were expended by them in payment of legal claims against the corporation, they should not in this action for money had and received, which is an equitable proceeding, be required to repay the same to said stockholders. This defense was set up in the answer of defendants, but upon the trial the court sustained all objections to the introduction of any evidence in support of said defense. Conceding that the defense alleged might be a legal defense in some instances, we think it is not such in the present action. That this action is in its nature an equitable one may be conceded. (*Hillwig* v. *Boyer,* 81 Cal. App. 763, 771 [254 Pac. 662].) We think it might be further conceded that if the plaintiff and his assignors, as stockholders of said corporation, received the full benefit of the payments made by defendants to the creditors of the corporation, equity and good conscience would not permit them to recover, even if the payments made by them to the defendants were illegal. The

evidence in this case, however, shows that plaintiff represents somewhat less than one-eighth of the stock of said corporation. There is no showing, or even allegation by defendants in their answer, that the other stockholders paid said assessment, or any part of it, either to defendants or to the new board of directors. As the new board rescinded the assessment, we may safely assume that no part of said assessment was ever paid to the new board of directors by any of its stockholders. Under this state of facts, if we accede to appellant's contention, we have the money of only a part of the stockholders, representing less than one-eighth of the total stock of the corporation, applied to the payment of the debts of the corporation without any contribution being made to the payment of said debts by the other stockholders. This is neither just nor equitable, and a defense based upon such a state of facts will not be permitted to defeat plaintiff's right of recovery.

We find no error in the record before us, and we are of the opinion that the judgment should be affirmed, and it is so ordered.

Preston, J., Shenk, J., Richards, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.