### FRESNO COUNTY et al. v. COMMODITY CREDIT CORPORATION.

#### No. 9204.

Circuit Court of Appeals, Ninth Circuit.

June 12, 1940.

W. C. Tupper, Dist. Atty., of Fresno, Cal. (Earl Warren, Atty. Gen., State of Calif., James J. Arditto, Deputy Atty. Gen., State of Calif., Tom Scott, Dist. Atty., Kern County, and W. A. McGinn, Asst. Dist. Atty., Kern County, both of Bakersfield, Cal., of counsel), for appellants.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Berryman Green, Sp. Assts. to Atty. Gen., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment declaring that the County of Fresno has no lien under the California law upon certain cotton situate in that county by reason of the assessment of its value for taxation to its owner, or its sequestration for the owner's unpaid taxes, which is superior to a lien upon it, created prior to the assessment and sequestration, to secure a loan by the appellee under the provisions of the Agricultural Adjustment Act of 1938, 7 U.S. C.A. § 1281 et seq.

Appellee, plaintiff below, in its amended complaint alleged facts showing the existence of an actual controversy concerning the priority of the appellants' lien and, as relief, prayed, for a determination of the controversy by a declaration of the law controlling the opposing contentions. The appellants, defendants below, moved to dismiss the bill on the ground that it failed to state a cause of action. The motion was denied and the court, finding that the defendant county and its assessor were "not desiring to further answer or plead," proceeded to render in a summary way a declaratory judgment responding to the prayer of the complaint. The defendants' desire and expectation that the court would grant the relief of adjudicating the actual controversy is evidenced by the giving of a stipulation, to be considered in connection with the declaration that they would not answer or plead, agreeing that the court "may provide that no interest or other penalties shall be collected from plaintiff for nonpayment of any of said taxes included in the pending cause and for subsequent years pending final determination of this action, and defendants will not object to such provision."

We dispose of the controversy by a consideration of the appellants' contention as stated in the amended complaint "that said cotton is subject to assessment and taxation by the State of California and its political subdivisions, and is subject to seizure and sale in the event of non-payment of taxes, without said assessments, seizures or sales being made subject to said rights, interests and liens of plaintiff," and assuming as valid the further claim of appellants' supplemental brief that "The pledgee's lien acquired by the Commodity Credit Corporation herein is in no better position than would be a lien acquired by a private individual."

Appellants contend that under the California law (1) an assessment on personal property creates a lien on the particular property assessed and (2) that, because any tax assessment is to be deemed a judgment against the taxpayer which, if not paid in the statutory period, warrants a seizure and sequestration by the assessor of any personal property whether or not it be the property assessed, the seizure creates a lien on the seized property superior to any contract lien existing prior to the seizure. We cannot agree with these contentions.

(1) Personal property has been assessed in California for three-quarters of a century. The Political Code of the State of California, section 3717, creates a specific lien on the taxpayer's real property for personal property taxes assessed to him. Appellants admit that there is no statute creating a tax lien upon the personal property assessed and that no case has held that personal property is subject to such a tax lien upon its assessment to the owner. The admission is most significant and the novel rule which appellants are now seeking to establish would impair every pledge whether of silver bullion, jewels, bonds, securities or any personal property with state or national banks or any lenders. It seems inconceivable that, if such a prior lien exists, no taxing authority has sought to enforce it and found the taxpayer's resistance in the courts.

Appellants' argument is stated as follows: " * * * the rule in California is that a tax obligation of the State of California or any of its political subdivisions is entitled to priority in payment regardless of whether it has been given any such preference by statute. The California Courts

have adopted 'the superior dignity' principle which is that because of the importance of the functions of government and the necessity of raising promptly the revenues necessary to carry out such functions, the obligation to pay taxes is necessarily of much greater dignity and on a much higher plane than ordinary obligations whether secured or unsecured, and therefore must be accorded some inherent priority over ordinary obligations, whether secured or unsecured, and whether such ordinary obligations existed before or after the tax obligation arose." This rule, appellants claim, is established in the following California cases: California Loan & Trust Co. v. Weis, 118 Cal. 489, 50 P. 697; O'Dea v. Mitchell, 144 Cal. 374, 381, 77 P. 1020, 1022; Woodil & Hulse Elec. Co. v. Young, 180 Cal. 667, 669, 670, 182 P. 422, 424, 5 A.L.R. 1296; San Mateo County Bank v. Dupret, 124 Cal.App. 395, 396, 12 P.2d 669, 670.

Our examination of these authorities shows none holding that a tax lien not specifically created by law overrides a prior contract lien. Whatever may have been said concerning the "superior dignity" principle in earlier cases on liens on real property is overruled by the holding in Guinn v. McReynolds, 177 Cal. 230, 232, 170 P. 421, 422, where a real estate mortgage lien was held superior to a subsequently created tax lien on the same property, not expressly made a first lien, for expenditures for eradication of disease and pests in orchards and elsewhere.

"* * * A lien for unpaid taxes or assessments is generally held to be superior to all contract liens, whether prior or subsequent in time. But the authorities declare, virtually without dissent, that even a tax lien is not entitled to rank ahead of a pre-existing mortgage, or other contract lien, unless the legislative enactment creating the tax lien has given it priority. 37 Cyc. 1143. The priority need not be declared in express terms. It is enough if the intent to postpone contract liens appears by reasonable inference from the provisions of the act. But the authorization for displacing the earlier lien must, under all the decisions, be found in the statute. * * *"

We hold there is no merit in appellants' contention that mere assessment of the value of personal property to known or unknown owners creates a lien upon that property.

(2) With regard to the contention that the assessment of any property is in effect a judgment against the taxpayer for the amount of any tax so assessed, section 3716 of the Political Code provides: "Every tax has the effect of a judgment against the person, and *every lien created by this title* has the force and effect of an execution duly levied against all property of the delinquent; the judgment is not satisfied nor the lien removed until the taxes are paid or the property sold for the payment thereof; provided, that the lien of every tax whether now existing or hereafter attaching shall cease to exist for all purposes after thirty years from the time said tax became a lien; * * *." (Italics supplied.)

The next section of the Code, section 3717 provides, "Every tax due upon personal property is a lien upon the real property of the owner thereof, from and after twelve o'clock m. of the first Monday in March in each year." Section 3820 of the Code provides: "The assessor shall have power to collect the taxes on *all* property when, in his opinion, said taxes are not a lien upon real property sufficient to secure payment of the taxes. * * *" (Italics supplied.) And the next section, section 3821, provides that "the assessor may collect the taxes by seizure and sale of *any* personal property owned by the person against whom the tax is assessed, * * *." (Italics supplied.)

Here we have the contrast between the specific lien on real property created by the statute and the right to seize *any* personal property whether assessed or not for *any* unpaid taxes, whether upon land or personal property.

On the face of these statutes it would appear that although the jewels of a landowner may not have been assessed, if he fail to pay the taxes upon his land his jewels may be seized by the assessor and sold. With this contention we are not concerned. The question is, assuming the jewels are pledge for a loan and are seized by the assessor, is the pledge lien subordinate to a lien created by the seizure?

In effect, it is claimed by appellants that if different parcels of jewels of the landowner be held by several different banks as pledges for their several loans, the assessor may pick his bank, take from it the pledged jewels free of the pledge, and impose on this particular bank the entire liability for the taxes which may exceed the

value of the pledged jewels. Though there be no lien upon the jewels by virtue of the assessment, the assessor's seizure of the pledge in the hands of the particular bank chosen to discharge the landowner's debt to the county destroys the bank's security.

No authority ·is cited to sustain this extraordinary proposition—the necessary corollary of the present attempt to destroy or impair the lien of the appellee. We find no merit in it.

Upon the controversy between the appellants and appellee we hold the seizure of the cotton by appellants, because of non-payment of taxes by the owner, creates no priority over the lien of appellee and that the rights of appellee cannot be impaired or destroyed by such action by appellants.

Judgment affirmed.