[Civ. No. 17252.   First Dist., Div. One.   Dec. 18, 1957.]

CITY OF BELMONT, Respondent, v. UNION PAVING
COMPANY (a Corporation) et al., Appellants.

Richard P. Lyons for Appellants.

Paul A. McCarthy, City Attorney, for Respondent.

BRAY, J.—Defendants appeal from a judgment entered
on an order sustaining demurrers to their amended answer
and cross-complaint without leave to amend.

QUESTIONS PRESENTED

1. Does the complaint state a cause of action?
2. Do the answer and cross-complaint state causes of defense and cross-complaint?

Both questions concern the effect of payments under protest by property owners to the city treasurer of principal and interest of certain street improvement bonds after time to foreclose said bonds has expired.

RECORD

Plaintiff's complaint, filed in 1954, alleges that defendants own or claim to own described bonds which prior to January 1, 1945, and in six assessments all dated prior to October 1, 1931, purportedly constituted liens against certain lots in Belmont Country Club Properties in Belmont. Plaintiff has on deposit in a special fund $11,162.36 which was paid plaintiff by various persons under protest, each having an interest in one or more of said lots "for the purpose of enabling such persons either to obtain a title insurance policy in connection with a sale of such property or to obtain a loan from a financial institution which required payment of said asserted lien to be made to the Treasurer of the plaintiff before insuring the title to the property against which such lien of such defendant was asserted." By law each of said bonds is conclusively presumed to be paid at all times since January 1, 1947, and plaintiff's records have been so marked; the liens of said bonds have lapsed by reason of the provisions of section 2911, Civil Code, and sections 329 and 330, Code of Civil Procedure. Defendants assert some right, title and interest in said moneys. Plaintiff then prays that defendants be required to show what right, title or interest they have therein and if they fail to do so that they be forever barred from asserting any right therein.

Defendants' amended answer denies the allegations of said complaint adverse to them and alleges that defendants are the sole owners of said moneys and are entitled to immediate payment thereof. The amended cross-complaint alleges that defendant Union performed certain improvement work in Belmont in payment for which the bonds were issued under the Improvement Act of 1911 (now Sts. & Hy. Code, div. 7); that on various dates prior to December 31, 1952,* the then

---

*While the cross-complaint did not allege the exact dates of these payments to the city treasurer, it is conceded that they were all made subsequent to January 1, 1947.

216

owners of the respective lots listed in plaintiff's complaint paid to the city treasurer of Belmont $11,162.36, being the unpaid balance of principal and interest due on said bonds; that between January 1, 1947, and December 31, 1952, plaintiff's city treasurer represented to Union in writing that the owners of said lots had deposited with her sums representing unpaid principal and interest on said bonds; that if defendants would send her said bonds with a written demand for the principal and interest due thereon she would remit the amount thereof to defendants; that they did so, solely in reliance on said promise, but would not have done so in the absence of said written promise; that the persons making said payments received direct and substantial benefits from the surrender of said bonds by Union in that the indebtedness represented thereby was marked "paid" and the lien of the bonds eliminated; that plaintiff had refused to pay said moneys to defendants and that plaintiff is holding the same for Union's use and benefit.

The cross-complaint in effect alleged the same matter as in the answer and that plaintiff is holding said moneys in trust for Union. It prayed for the amount of said moneys to Union.

### 1. *Complaint.*†

It is a little difficult to understand plaintiff's theory. It concedes that it is not an action to quiet title to the money (it claims no title to it). It contends that it is an action for cancellation of Union's bonds and assessments on the ground that they no longer constitute a lien upon the real property (not of plaintiff but of the owners of the lots) and to require defendants to set up any claim they may have to the money. They cite section 3412, Civil Code, as to the authority for the action. This section reads: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." However, they do not describe the bonds nor do they ask for their cancellation. Likewise plaintiff is not "a person against whom" any bond is "void or voidable" or one against whom "if left outstanding it may cause serious injury." Plaintiff refers to section 1050, Code of Civil Procedure: "An action

†For the first time, defendants on appeal question the sufficiency of the complaint to state a cause of action. Plaintiff concedes they may do this. See 2 Witkin, California Procedure, pp. 1474-1475.

may be brought by one person against another for the purpose of determining an adverse claim, which the latter makes against the former for money or property upon an alleged obligation . . .'' Here plaintiff has money which defendants claim is due upon plaintiff's alleged obligation to pay defendants for the surrender of the bonds. (Plaintiff could also have brought an interpleader action under section 386, Code of Civil Procedure, and joined the property owners therein.) It may be that in this action, to fully determine this question, it would be necessary to join the property owners who are the real persons in interest on the plaintiff's side, plaintiff being merely a stakeholder. However, while the failure to join necessary parties might be demurrable upon that ground, it would not affect the cause of action stated against defendants, which cause of action, in effect, states that plaintiff has moneys in its hands which defendants claim, but to which they are not entitled and which others claim, and ask that defendants come in and show title, if they can, thereto. If, however, the admissions of defendants' answer show that defendants have no right to this money, then the stakeholder would not be required to interplead the lot owners as against whom plaintiff makes no claim of right to the money.

This brings us to the

2. *Answer and Cross-complaint.*

■ Defendants concede that at the time of the payment by the property owners to plaintiff the provisions of section 2911, Civil Code, had already operated to bar foreclosure of the liens of the bonds, but they contend that there was a moral obligation underlying the original debt, and that under the rule set forth in *Lambert* v. *Schmalz* (1897), 118 Cal. 33 [50 P. 13], which holds that such obligation is sufficient consideration for a new promise, the payment by the lot owners to plaintiff was either a payment in full for defendants of the whole obligation or the equivalent of a new promise to pay. The difficulty with this contention is that the payment was made under protest. It is difficult to understand how an unwilling payment could have the effect defendants claim. Defendants rely upon *Brumagim* v. *Tillinghast* (1861), 18 Cal. 265 [79 Am.Dec. 176], where the plaintiff claiming the act imposing a state stamp tax upon certain bills of lading was illegal, nevertheless paid the tax under protest. The tax was thereafter held illegal and the plaintiff sued the San Francisco treasurer to whom the tax had been paid for the return

of his money. The court held (pp. 270-271) : ". . . the rule is at this day well settled that moneys voluntarily paid upon a claim of right, with full knowledge of all the facts, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability. The illegality of the demand paid constitutes of itself no ground for relief. There must be, in addition, some compulsion or coercion attending its assertion, which controls the conduct of the party making the payment. It is the compulsion or coercion under which the party is supposed to act which gives him a right of relief." That rule has been greatly relaxed.

Applicable here to defendants' contention is *Flynn* v. *City & County of San Francisco*, 18 Cal.2d 210, 217 [115 P.2d 3] : "Decidedly *apropos* to the argument thus advanced is the following language from *Young* v. *Hoagland*, 212 Cal. 426, 430, 431 [298 P. 996, 75 A.L.R. 654] : '. . . That case [*Brumagim* v. *Tillinghast, supra*] may have stated the rule of the common law at the time of its pronouncement in regard to voluntary payments, but the rule, as thus announced, has been greatly relaxed in more recent decisions in favor of the recovery of money improperly exacted by a defendant. (21 R.C.L. p. 147.) ''Among the instances of the relaxation of the strictness of the original common law rule is the case of payments constrained by business exigencies, that is payments of illegal charges or exactions under apprehension on the part of the payers of being stopped in their business if the money is not paid. It has been stated that the general rule with regard to duress of this character is that. where, by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain, he may recover it." . . .' ''

In these days when it is practically impossible to sell or encumber real property without title insurance, and title insurance companies will not issue such insurance where there is even a slight cloud upon the property, there is an element of coercion or duress in the making of a payment to clear away that cloud, just as much as in the above quotation the payment is made to prevent a stoppage of business. While in the cases cited in the Flynn case the compulsion came from a party to the transaction, and here it came from a third party (the title company), we see no reason why the rule

should not apply. In effect, the compulsion also came from defendants, in that they claimed a lien on the lot owners' property, to be free from which claim the lot owners were required to make the payment under protest.

The payment by the lot owners under the circumstances here was not a payment in full nor a new promise to pay the old indebtedness, and did not have the effect of avoiding the bar of section 2911. That section provides that after January 1, 1947, where more than four years had expired after the due date of the last installment of this type of assessment (it is conceded that such is the situation here) the lien of the assessment shall conclusively be presumed to have expired. ■■ Of course, there is no underlying personal obligation on these assessments and the extinguishment of the lien extinguished the debt. ■■ Thus, the situation is somewhat different from a mere statute of limitations, which is a matter of defense to be raised whenever an effort is made to collect the debt. For example, in *Rombotis* v. *Fink,* 89 Cal.App.2d 378, 392 [201 P.2d 588], it was held that an action to quiet title to the property as to which the lien had expired might be brought without tendering the amount of the previous obligation, which tender is required in cases where ordinary statutes of limitation apply. Here by operation of law the debt automatically is extinguished. At the time of payment by the property owners to the city treasurer as well as at any time subsequent to January 1, 1947, defendants could not have maintained an action for the recovery of the amount of the bonds as their liens were conclusively presumed to have been extinguished. The city treasurer therefore had no right to agree to pay defendants the amounts of the outlawed obligations and had and has no authority to pay to defendants the moneys she received under protest.

The answer and cross-complaint did not state a cause of defense and of cross-complaint and the demurrers thereto were properly sustained.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 17, 1958, and appellants' petition for a hearing by the Supreme Court was denied February 11, 1958.