[Civ. No. 43333. Second Dist., Div. Three. Oct. 25, 1974.]

CHRYSLER CREDIT CORPORATION, Plaintiff and Respondent, v. HAROLD J. OSTLY, as Tax Collector, etc., et al., Defendants and Appellants.

664

COUNSEL

John H. Larson, County Counsel, and Lawrence B. Launer, Deputy County Counsel, for Defendants and Appellants.

Styskal, Wiese & Melchione and Alvin O. Wiese, Jr., for Plaintiff and Respondent.

## OPINION

**POTTER, J.**—This is an appeal from a judgment in favor of the plaintiff, Chrysler Credit Corporation (1) against defendant Harold J. Ostly, Tax Collector for the County of Los Angeles, and the County of Los Angeles (hereinafter collectively referred to as County), and (2) against William A. Ramsell, Tax Collector for the City of Long Beach, and the City of Long Beach (hereinafter collectively referred to as City). The judgment against defendant County was in the principal sum of $3,160.95 with interest in the sum of $641.19; the judgment against defendant City was in the principal sum of $659.38 with interest in the sum of $133.72. The principal sums of the two judgments were amounts paid by plaintiff "under protest" to prevent scheduled sales of personal property pursuant to notices of tax collector's sale posted by defendant County and by defendant City, specifying respectively said sums as the amounts due for personal property taxes, fees and mileage.

The facts are not disputed. All the evidence presented to the trial court was included in a stipulation of facts. Some additional facts are available to this court by virtue of concessions in the appellate briefs.

The pertinent facts are that on August 10, 1967, Ray Vines Chrysler-Plymouth Corporation (hereinafter referred to as Vines) entered into a loan

agreement with plaintiff. Vines received a loan, in excess of $800,000, and it executed a security agreement in favor of plaintiff pledging all of its vehicles, accounts receivable, contract rights, chattel paper, inventory, equipment, fixtures, personal property and the proceeds thereof then existing or thereafter acquired to secure repayment of the debt. This security agreement was perfected by filing a financing statement with the Secretary of State on August 10, 1967.

On March 1, 1969, the County and the City made assessments of the business personal property of Vines. Personal property taxes in the sum of $3,143.95 were levied thereon by the County, and personal property taxes in the sum of $656.36 were levied on said personal property by the City. Both of these assessments were placed on the unsecured tax roll.

On July 3, 1969, Vines advised plaintiff that it could not pay its debts as they matured and invited plaintiff to take possession of the assets pledged as security. On that date plaintiff took possession and assumed control of the assets of Vines, including all of the personal property at said dealership, and placed a security patrol on the premises.

On or about July 11, 1969, plaintiff posted a notice of sale pursuant to section 9504 of the Commercial Code for the purpose of selling the pledged personal property at public auction. On July 15, 1969, plaintiff accelerated the indebtedness and duly notified Vines that the entire balance of the indebtedness, which exceeded $800,000, was due. On July 16, 1969, while plaintiff's Commercial Code sale was pending, defendants, without prior notification to plaintiff, took action pursuant to section 2914 et seq. of the Revenue and Taxation Code[1] by posting notices of sale at Vines' premises. According to defendants' closing brief, "[t]he property was seized in July because it clearly appeared that the assessee was experiencing financial difficulties and it was imperative to act immediately to collect the tax debt."

The notice posted by defendant County stated that the "Assessee and/or Owner" was "Vines Chrysler-Plymouth," specified the amount due for taxes, fees and mileage as $3,160.95, described the property "seized" and to be sold at public auction as "Chrysler-Plymouth Dealer, all Personal Property,"

---

[1]The pertinent portions of these sections are: "Taxes due on unsecured property may be collected by seizure and sale of any of the following property belonging or assessed to the assessee: (a) Personal property. (b) Improvements. (c) Possessory interests." (§ 2914.)

"Notice of the time and place of sale shall be given at least one week before the sale by publication in a newspaper in the county, or by posting in three public places. In the event that it is necessary to continue the sale to a later date, notice shall be given as provided above." (§ 2916.)

"On payment of the price bid for property sold, the delivery of the property with a bill of sale vests title in the purchaser." (§ 2918.)

and stated that "On payment of the amount bid for any property sold, the Tax Collector, or his deputy, will deliver the property to the purchaser, with a Bill of Sale, and the title shall thereon vest in the purchaser." The notice posted by defendant City described the property "seized" and to be sold as "personal property belonging to Vines, Chrysler & Plymouth and or other unknown owners," at the address of Vines. It likewise stated, "Upon payment of the price bid for any property sold, the property sold will then and there be delivered to the purchaser, together with a bill of sale vesting title in said purchaser."

The amounts stated as due on said notices and sale were, on July 31, 1969, paid by plaintiff to defendant County and to defendant City, respectively. According to defendants' opening brief, "The taxes were paid by Respondent to prevent a scheduled County sale of certain property upon which there were delinquent taxes."[2] Plaintiff made said payments "under protest," claiming in each case that its security interest took priority over the assessments which were "void" as to such interest. On August 10, 1969, pursuant to the notice of sale under section 9504 of the Commercial Code, the assets of Vines were sold by plaintiff, and after application of the proceeds of said sale to Vines' indebtedness, there remained due, owing and unpaid to plaintiff a sum in excess of $150,000 (including the $3,160.95 paid to defendant County and the sum of $659.38 paid to defendant City).

There is no allegation in the complaint and nothing in the stipulated facts or findings of fact to indicate or suggest that plaintiff filed any claim for refund pursuant to section 5097 of the Revenue and Taxation Code, or filed any claim for money or damages pursuant to sections 905 and 910 of the Government Code.

The matter was submitted to the trial courts on the basis of the stipulation of facts and on written briefs and oral argument. When the court indicated its intended decision to render judgment for plaintiff as prayed, findings of fact and conclusions of law were requested by both parties. Findings were submitted by counsel for plaintiff. Objections and proposed counterfindings were filed by defendants. The court heard argument and settled the findings, making interlineations and deletions in those submitted by plaintiff.

The contentions argued in the trial briefs related primarily to the availability of the seizure and sale procedure provided by section 2914 et seq. of the Revenue and Taxation Code in respect of personal property subject to a perfected security interest or lien in favor of someone other than the assessee. In this connection, plaintiff contended that this procedure is not

---

[2]Though this statement makes no reference to the sale scheduled by the City, it is apparent that the City was paid on the same basis as the County.

intended to apply to property which is subject to a perfected security interest and, therefore, that defendants' resort to the use of it was unlawful. Defendants contended there was no such exception to the applicability of the procedure and that their conduct was fully authorized.

A secondary issue extensively argued in the trial briefs was whether section 2914 et seq. were constitutional if construed as providing for seizure and sale of property subject to prior perfected security interests, by reason of their failure to provide for notice to the holder of the security interest and for a hearing in advance of the seizure and sale.

The findings of fact and conclusions of law do not precisely articulate the basis for plaintiff's recovery of the amounts paid. They suggest, however, a theory of recovery not directly urged in plaintiff's trial brief. The court concluded (conclusion No. 2) that the perfected security interest of plaintiff was superior to the claim of defendants based upon their tax assessments, and (conclusion No. 5) that defendants were not authorized to "seize, attempt to seize, sell, or attempt to sell personal property pursuant to Revenue and Taxation Code sections 2914 and 2916 . . . the effect of which would be to impair or defeat a perfected lienholder's right to possession of or an interest in the personal property." It found, however (finding No. 14), as follows: "Defendants have continually asserted that they have a prior lien on or right to plaintiff's personal property as security for the payment of unsecured personal property taxes assessed on account of personal property even though such taxes are assessed to RAY VINES CHRYSLER PLYMOUTH subsequent to the date upon which CHRYSLER CREDIT CORPORATION perfected its security interest. . . ."

The court further concluded (conclusion No. 4) that the defendants' "seizure and threatened sale" of the assets of Vines was "in derrogation [*sic*] of the rights of" plaintiff.

By the foregoing findings and conclusions, the court held that the unauthorized manner in which defendants proceeded in respect of the threatened sale constituted an unlawful assertion of the right to transfer full title to the assets of Vines, free and clear of plaintiff's security interest, and to deliver possession thereof to the high bidder, and that such conduct was a disparagement of plaintiff's perfected security interest and of plaintiff's right to possession of such assets for the purpose of completing its sale pursuant to the provisions of the Commercial Code.

It thus appears that the court's judgment was based at least in part[3] on the proposition that (a) even if defendants had the power to conduct a sale, they had no right publicly to assert the power to conduct a sale which would defeat plaintiff's security interest, (b) defendants wrongfully asserted such power, and (c) money paid by plaintiff "to prevent" such threatened sale was recoverable on the theory that it was an involuntary payment. This theory is now urged by plaintiff in its brief (albeit without citation of supporting authorities)[4] as a basis for affirming the judgment.

Before proceeding to a discussion of any of the contentions of the parties, it should be noted that various legal issues have been eliminated from the case by concessions on the part of defendants. Defendants concede: (1) that plaintiff had a perfected security interest which was a lien on all of Vines' property which defendants purported to seize and sell; (2) that the taxes assessed upon such property did not constitute a lien upon it[5] and, therefore, (3) that the interest in such property which defendants were entitled to sell pursuant to section 2914 et seq. of the Revenue and Taxation Code (assuming the applicability thereof) was a limited title, subordinate to the security interest of plaintiff.[6]

Concession (3) is based upon two court decisions: *Fresno County* v. *Commodity Credit Corporation* (9th Cir. 1940) 112 F.2d 639 and *Dohrmann Co.* v. *Security Sav. & Loan Assn.*, 8 Cal.App.3d 655 [87 Cal.Rptr. 792]; and accords with the holdings in those cases. In *Fresno County* v. *Commodity Credit Corporation, supra,* a declaratory relief action was brought by a secured creditor who had a lien on cotton which had been assessed as personal property by Fresno County. The county contended that the cotton was "subject to seizure and sale in the event of non-payment of taxes, without . . . seizures or sales being made subject to said rights,

---

[3]Other findings and conclusions of the court resolved other issues in favor of plaintiff's contentions. It was found (finding No. 12) that the procedure specified in section 2914 et seq. afforded plaintiff "no prior notice or opportunity to be heard respecting the seizure of the personal property" of Vines. The court concluded (conclusion No. 3) that defendants were not authorized "to seize, attempt to seize, sell, or attempt to sell personal property . . . subject to a prior perfected security interest" without giving plaintiff, as holder of a perfected security interest, "prior notice and opportunity to be heard."

[4]As will hereinafter appear, there are such authorities.

[5]This concession accords with established law: "The lien of a property tax exists only by virtue of statute. The general rule is that, unless expressly made so by statute, taxes are not a lien. [Fns. omitted.]" (46 Cal.Jur.2d (1959) Taxation, § 230, at p. 755. See *Guinn* v. *McReynolds*, 177 Cal. 230, 232-234 [170 P. 421]; *Home Owners' Loan Corp.* v. *Hansen*, 38 Cal.App.2d 748, 750-752 [102 P.2d 417].)

[6]In their opening brief, defendants say: "[A] lien-holder's interest in property which is sold at a 2914 sale will not be impaired or defeated."

interests and liens of plaintiff." The Court of Appeals rejected said contention, stating (112 F.2d at p. 642): "Upon the controversy between the appellants and appellee we hold the seizure of the cotton by appellants, because of non-payment of taxes by the owner, creates no priority over the lien of appellee and that the rights of appellee cannot be impaired or destroyed by such action by appellants."

In *Dohrmann Co.* v. *Security Sav. & Loan Assn., supra,* the dispute was between a plaintiff who was an unpaid conditional seller of personal property and a subsequent creditor holding a junior security interest in said property. The creditor with the junior security interest was also the purchaser of the property at a tax collector's sale conducted pursuant to section 2914 et seq. of the Revenue and Taxation Code. In reversing a judgment for defendant after general demurrers were sustained, the court stated the following concerning the effect of a sale under section 2914 et seq. upon previously perfected liens: "[The] items were personal property which had appeared on Alameda County's 'unsecured roll' (see § 109), and which had been seized and sold for delinquent taxes pursuant to section 2914. A tax collector, seizing and selling personal property for taxes, is acting under the statutory equivalent of a common law writ of distraint. (See *In Re Timberline Lodge* (D.Ore. 1955) 139 F.Supp. 13, 16.) He does not, however, pass title to personal property which has been perfected from his own lien upon it; unlike the situation with realty, the law gives him no tax lien on personal property. (Ehrman and Flavin [*op. cit. supra*] § 529, pp. 504-505. See *Fresno County* v. *Commodity Credit Corp.* (9th Cir. 1940) 112 F.2d 639, 640.) Section 3712, operating to deliver clear title to property sold for taxes, is part of a statutory scheme which is obviously designed to stabilize and guarantee tax title to realty. The Legislature has enacted no similar scheme as to personal property." (8 Cal.App.3d at pp. 663-664.)

The above interpretation of section 2914 et seq. of the Revenue and Taxation Code is reinforced by the addition of sections 2191.3, 2191.4 and 2191.5 to the Code in 1961. Those sections provide for liens to secure payment of personal property taxes, specify the time of filing for record of a certificate of delinquency as the date of attachment of such liens, and make such liens subordinate to "any other lien which attached prior to the date" upon which the tax lien attaches.

The third concession of defendants, therefore, correctly states the law with respect to the effect of a seizure and sale under section 2914 et seq. of the Revenue and Taxation Code; such proceedings are not effective to defeat or impair the interest of anyone holding a perfected security interest.

## Contentions

Defendants contend that the action taken by them pursuant to section 2914 et seq. of the Revenue and Taxation Code was authorized by said sections, and that no denial of due process was involved therein since plaintiff was duly notified of the seizure and intended sale and had available to it post-seizure judicial procedures to test any resulting claim of title or right to possession superior to plaintiff's rights under its perfected security interest. Plaintiff contends that, under the circumstances, the defendants had no power or authority to seize and sell the property, that the notice of seizure and sale constituted a taking of plaintiff's property without due process, and that the payment of the taxes by plaintiff as a result of the coercive effect of defendants' unlawful conduct is recoverable as an involuntary payment.

## Issues

The issues determinative of this appeal, as perceived by this court, are somewhat different than those posed by the contentions of the parties. They are:

(1) Were the notices of "seizure" and sale as posted by defendants an unlawful threat to sell and deliver title and possession, constituting wrongful disparagement of plaintiff's title and right to possession?

(2) Was plaintiff's payment of the taxes on the property assessed an involuntary payment made under compulsion of defendants' wrongful disparagement?

(3) Has plaintiff shown its compliance with the procedural conditions precedent to the recovery of money paid under such compulsion?

## The Notices of Seizure and Sale Were Unlawful

█ The foregoing authorities limiting the effect of a seizure and sale under section 2914 et seq. of the Revenue and Taxation Code to a transfer of the assessed property subject to the valid liens in favor of third parties eliminate any valid reason for holding such procedure inapplicable to property subject to prior liens. There is nothing in the statutory language suggesting any such restriction and no logical reason to imply one. If the assessee has any equity in the property, the tax collector should be able to reach it like any other property. The foreclosure of junior liens by sale of property subject to prior encumbrances is common practice. Properly conducted, it results in no interference with the rights of senior lien holders and therefore there is no reason to assume that the Legislature would not intend to

sanction proceeding in such fashion to effect collection of personal property taxes.

There was, therefore, nothing unlawful per se in defendants' proceeding to conduct a seizure and sale pursuant to section 2914 et seq. of the Revenue and Taxation Code. Such a sale, as a matter of law, could not terminate plaintiff's security interest and if such seizure and sale had been properly carried out by defendants, plaintiff's security interest and possessory rights would have suffered no adverse effect. The interest of the assessee, Vines, would have been seized and sold (if there had been any bidders) subject to the prior rights of plaintiff. The prior rights thus respected would have included not only the security interest but, as well, plaintiff's right to retain possession of such property and sell it in accordance with the provisions of the Commercial Code governing disposition of collateral after default.[7] Such a tax sale would not have interfered in any respect with plaintiff's rights.

The foregoing authorities also dispose of plaintiff's contention that the notices of seizure and sale were the taking of its property without due process of law because it was not given prior notice and a hearing. It is true that "[w]hen conducting a proceeding which may result in the termination of a citizen's title to property, government denies due process of law to a known, interested party if it fails to give him adequate notice of its action." (*Dohrmann* v. *Security Sav. & Loan Assn., supra,* 8 Cal.App.3d 655, 664.) It is also true that normally in addition to such notice some kind of preliminary hearing must precede the taking of any significant interest in property. (*Randone* v. *Appellate Department,* 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13], and *People* ex rel. *Younger* v. *Allstate Leasing Corp.,* 24 Cal. App.3d 973 [101 Cal.Rptr. 470].) However, these requirements were not invoked by defendants' mere initiation of proceedings to seize and sell, since their conduct did not constitute any taking of plaintiff's property. The purported "seizure" by simply posting a notice stating that the property had been seized was a nullity. Section 2914 et seq. of the Revenue and Taxation Code give no legal effect to any such notice and it did not, in fact, interfere with the physical possession which was retained by plaintiff at all times.

The threatened sale did not actually occur and could not have terminated plaintiff's title even if it had occurred. It is, therefore, unnecessary to decide whether, under the rule of *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820] and *Randone* v. *Appellate Department, supra,* 5 Cal.3d 536, 541, the termination of interests (such as that of the assessee) by seizure and sale to collect taxes can be accomplished

---

[7]Section 9503 of the Commercial Code, as well as the express terms of the security agreement between plaintiff and Vines, authorized such action.

without prior notice and hearing, and we express no opinion on that question.

The foregoing, however, does not dispose of plaintiff's challenge to the lawfulness of defendants' conduct.. Defendants had only the right to seize and sell Vines' assets subject to plaintiff's prior security interest and right to possession. From the facts that defendants acted precipitously, in light of the assessee's financial difficulties, and that plaintiff was in possession of Vines' assets in the premises at which defendants posted their notices, it may be inferred that defendants were aware of the existence of plaintiff's prior rights, which were a matter of public record. Nonetheless, defendants' notices purported to offer for sale full title to and right to possession of all of the property assessed. In the notice posted by defendant County, the property was described as: "Chrysler-Plymouth dealer all personal property." In the notice posted by defendant City the property is described as: "Personal property belonging to Vines, Chrysler & Plymouth and or other unknown owners." Both notices expressly stated that the property would be delivered to the purchaser with a bill of sale, and that the title would thereon vest in the purchaser.

Under the circumstances, defendants' notices of seizure and sale constituted an unlawful disparagement of plaintiff's title. That tort is defined in *Gudger* v. *Manton*,[8] 21 Cal.2d 537 [134 P.2d 217], where the court said (at page 541): "The judgment here under attack rests upon the theory of a slander by appellant of the title of plaintiff's property, or more accurately the wrongful disparagement of plaintiff's title thereto to his injury. At the outset it is helpful to have before us an accurate definition of that tort. It may be best stated as follows: 'One who, without a privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused.' (Rest. Torts, § 624.)" (See also Rest., Torts, §§ 624-625; Rest. 2d Torts, Tentative Draft No. 12, §§ 623A, 624.) The circumstances were such that defendants were obliged to foresee that the conduct of prospective purchasers from plaintiff might be determined by the notices of seizure and sale. Such notices indicated to any such purchaser that he would be buying a lawsuit, a commodity commonly regarded as of doubtful value. The disparagement of plaintiff's security interest inherent in the form of notice used by de-

---

[8]One statement only in *Gudger* v. *Manton* was disapproved in *Albertson* v. *Raboff*, 46 Cal.2d 375 [295 P.2d 405]. The portion disapproved, however, is not pertinent to the definition of the tort of disparagement.

fendants was, moreover, wholly unnecessary. The simple addition of a statement to the effect that the title to the property being sold, as well as the right to possession, was subject to the rights of any prior lienholders of record would eliminate such disparagement without the necessity of the tax collector's making any inquiry as to the existence of such prior liens. It would then be the duty of the bidders to check the necessary public records to verify the extent of the title subject to acquisition.

*Plaintiff's Payment of the Tax, if*
*in Fact Involuntary, Was Recoverable*

The principle governing recovery of involuntary payments made to satisfy an illegal demand is stated in *Flynn* v. *San Francisco*, 18 Cal.2d 210 [115 P.2d 3]. A taxpayer sued to recover illegally levied license taxes upon vehicles. The taxes had been paid by the plaintiff as a result of defendant's policy of enforcement which included wholesale stopping of vehicles whereupon "their drivers were escorted to the tax collector's office and were forced to notify their employers they were so held until such time as the money arrived to satisfy the demands made." In holding the tax recoverable, the court said (18 Cal.2d at pp. 216-217): "Appellant urges, however, that otherwise there was no compulsion, and the payments were voluntary because made without the filing of formal protests and because the tax collector had no power to execute the threats of seizures, confiscations or sequestrations. (*Maxwell* v. *County of San Luis Obispo,* 71 Cal. 466 [12 Pac. 484]; *Brumagim* v. *Tillinghast,* 18 Cal. 265 [79 Am. Dec. 176].) Decidedly *apropos* to the argument thus advanced is the following language from *Young* v. *Hoagland,* 212 Cal. 426, 430, 431 [298 Pac. 996, 75 A. L. R. 654]:

'. . . That case [*Brumagin* v. *Tillinghast, supra*] may have stated the rule of the common law at the time of its pronouncement in regard to voluntary payments, but the rule, as thus announced, has been greatly relaxed in more recent decisions in favor of the recovery of money improperly exacted by a defendant. (21 R. C. L., p. 147.) "Among the instances of the relaxation of the strictness of the original common law rule is the case of payments constrained by business exigencies, that is payments of illegal charges or exactions under apprehension on the part of the payers of being stopped in their business if the money is not paid. It has been stated that the general rule with regard to duress of this character is that where, by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain, he may recover it." (21 R. C. L., pp.

154, 155.) Upon this same subject we find the following statement in 20 California Jurisprudence, page 964: "The underlying principle (that money paid under compulsion may be recovered) is said to be that, by the performance of or threat to perform some unlawful act whereby plaintiff will suffer loss, the defendant has induced the plaintiff, under circumstances sufficient to control the action of a reasonable man, to pay money which he would not otherwise have paid." . . . '"

*Young* v. *Hoagland*, 212 Cal. 426 [208 P. 996, 75 A.L.R. 654], cited and quoted by the court in *Flynn*, was an action by stockholders to recover an assessment illegally levied by the board of directors and paid under threat of sale of the stock for nonpayment. In addition to that portion of the opinion quoted above in *Flynn*, the following pertinent statement appears in *Young* v. *Hoagland* (212 Cal. at p. 431): "It has frequently been held that payment of an illegal claim to a public officer upon the threat of the latter to seize and sell the property of the plaintiff under process held by said officer, is a payment made under compulsion and may be recovered back. 'In such cases the parties cannot treat on equal terms, and the one on whom the demand is made is not bound to submit to the seizure of his property, and then seek his remedy for trespass, but he may pay the illegal demand and then recover it back.' (21 R. C. L., p. 159.)"

The same principle has been found controlling in several more recent decisions of our appellate courts. (See, e.g., *City of Belmont* v. *Union Paving Co.*, 156 Cal.App.2d 214, 217-218 [319 P.2d 353]; *Newport Bldg. Corp.* v. *City of Santa Ana*, 210 Cal.App.2d 771, 778 [26 Cal.Rptr. 797].)

■ The fact that plaintiff was not the taxpayer against whom the taxes were assessed does not preclude him from recovering. Where the effect of an unlawful assertion of a disparaging claim is a demand that some third party (not the obligor) pay it, a payment made by a third party may be recoverable as an involuntary payment. In *Wake Development Co.* v. *O'Leary*, 118 Cal.App. 131 [4 P.2d 802], plaintiff, an owner of property in the middle of a transaction to sell it, was confronted with a levy of execution upon such property on a judgment against a debtor who had no interest in it. After prevailing in an action to quiet title, the plaintiff, who had in the meantime paid $3,000 to effect a release and thereby avoid cancellation of the sale by his purchaser, brought suit to recover the $3,000. The judgment for plaintiff was affirmed. The court said (118 Cal.App. at p. 135): "Respondent had a right to sell its property without being molested with the wrongful levy of execution based upon appellant's unfounded claim that her judgment debtor had an interest in the property. That right was denied to respondent by the act of appellant. Owing to the threatened loss of the

sale and the delay necessarily incident to the prosecution of the injunction suit, respondent's only means of avoiding serious loss was by payment of the money. Under these circumstances the payment may not be considered voluntary (*McTigue* v. *Arctic Ice Cream S. Co., supra*), and the trial court properly found that 'the exaction of the three thousand dollars from the plaintiff was without right on the part of the defendant and that plaintiff paid the same under compulsion in order to save financial loss to plaintiff.' "

The opinion of this division in *Scol Corp.* v. *City of Los Angeles,* 12 Cal.App.3d 805 [91 Cal.Rptr. 67], is not to the contrary. In that case the payment of the so-called "tipplers' tax" by a bar owner was held to be voluntary and not recoverable though the tax was illegal. The plaintiff claimed that he was coerced into making payment from his own funds and did not collect the tax from his customers, as required by the ordinance, because of the economic necessity of competing with bars outside the city. This court said (12 Cal.App.3d at p. 810): "Scol was not a taxpayer who was compelled to pay illegal taxes. Rather, Scol was a tax collector who was compelled to collect illegal taxes and was subject to possible penalties for failure to collect these taxes. As already noted, Scol's liability to the city was for this failure to collect these taxes and not for the taxes themselves. (Cf. *Brandtjen & Kluge* v. *Fincher, supra,* and cases noted therein.) Further, while the use tax at issue has been declared illegal in *Century Plaza Hotel Co.* v. *City of Los Angeles, supra,* 7 Cal.App.3d 616 [87 Cal.Rptr. 166], the statutory scheme requiring retailers like Scol not only to collect the tax, but also making them liable for their failure to collect the tax was many years ago upheld against constitutional challenge by the highest court in the land. (See *Felt & Tarrant Mfg. Co.* v. *Gallagher,* 306 U.S. 62 [83 L.Ed. 488, 59 S.Ct. 376].)"

The situation in *Scol* is thus distinguishable on the basis that it was not a wrong against plaintiff to require him to collect the tax, even if the tax was unlawful. Another distinction between the factual situation in *Scol* and those involved in the above cited authorities is that the conduct of the City of Los Angeles in enacting and attempting to enforce the tipplers' tax did not constitute a demand, express or implied, that the bartender pay the tax from his own funds.

■ The conduct of defendants in the case at bar in posting notices of seizure and sale in which they asserted the right to sell and deliver possession and full title to plaintiff's property, apparently with full knowledge of plaintiff's rights, and for the purpose of effecting quick collection to avoid the effect of "the actual or threatened insolvency of the taxpayer"

constituted not only an unlawful disparagement of plaintiff's title but as well a demand that plaintiff pay the taxes.

Under the authorities cited, plaintiff's right to recover depended upon its proving that the payment was made under circumstances constituting compulsion. There are two elements to such a showing: first, the payment must have been made "under circumstances sufficient to control the action of a reasonable man," and second, the plaintiff must, in fact, have considered that to protect its business interests it was "necessary to make a payment." (*Flynn* v. *San Francisco, supra,* 18 Cal.2d at p. 217.) Both such elements are matters of fact which depend upon the evidence in each particular case and which facts are for the trial court to determine. (*Engelken* v. *Justice Court,* 50 Cal.App. 157, 159 [195 P. 265].)

The findings of fact below do not include any finding upon either of these issues. Though defendants concede that the taxes were paid "to prevent a scheduled County sale of certain property," no evidence was offered on the basis of which the trial court could have found, or this court can find, that either of the above two elements existed. Plaintiff simply did not try the case on this theory.[9] It is, therefore, not possible for this court to affirm the judgment on the basis of recovery of a payment involuntarily made.

### A Claim for Refund of Taxes or a Claim for Money or Damages Was Required

■ According to its title, plaintiff's complaint seeks "refund of taxes paid under protest." The letters which accompanied plaintiff's payments stated that payment was made "under protest," and claimed that the whole assessment was "void to the extent of the security interest held by" plaintiff. No claims for refund of the taxes so paid were filed.

There are two procedures provided by the Revenue and Taxation Code for obtaining refund of taxes. The normal procedure is specified in sections 5096 through 5108. This procedure is specifically applicable to taxes "[e]rroneously or illegally collected" (§ 5096, subd. (b)), requires a verified

---

[9]If plaintiff had tried the case on this theory, it is not unlikely that it would have been able to prove both such elements. In the form in which they were posted, the notices of seizure and sale would no doubt have a chilling effect on plaintiff's Commercial Code sale. In view of the small amount of the tax claims involved, alternate methods of eliminating the problem could have entailed greater monetary outlay than paying them. For example, an injunction suit against the tax collector might have involved fees and expenses in excess of the tax. If plaintiff's sale were made under an indemnity agreement with its purchaser, there might have been comparable expenses incurred in defending the purchaser's title and right to possession.

claim for refund filed within four years after making of the payment (§ 5097), permits suit within six months after rejection (§ 5103) and makes a claim for refund a mandatory condition precedent to any such action (§ 5104).[10]

The only exception to the procedures specified in section 5096 et seq. (requiring a claim for refund) is that provided by section 5136 et seq. of the Revenue and Taxation Code. These sections permit the owner of property to pay the taxes on it under protest and to sue for recovery thereof within six months after such payment. The pertinent provisions of the Revenue and Taxation Code establishing this protest procedure are sections 5136, 5137, 5139 and 5141.[11]

It is apparent from the language of these sections that the protest procedure is available only where the entire assessment or some specific portion thereof is void.

Though plaintiff sought in its protests to characterize the assessments as "void to the extent of the security interest" held by it, it made no showing which supports that claim and appears to have abandoned it. In the statement of the case in defendants' opening brief it is asserted that "[t]here is no issue involving the validity of those assessments as they were not challenged by any party." Plaintiff, in its brief, concedes: "Appellants' statement of the case is substantially correct." It is, moreover,

---

[10]Revenue and Taxation Code section 5104 reads as follows: "No action shall be commenced or maintained under this article unless a claim for refund shall have been filed in compliance with the provisions of this article, and no recovery of taxes shall be allowed in any such action upon a ground not asserted in the claim for refund."

[11]"After taxes are payable, any property owner may pay the taxes on his property under protest. A payment under protest is not a voluntary payment." (§ 5136.)

"The protest shall be in writing, specifying: (a) Whether the whole assessment is claimed to be void or, if only a part, what portion. (b) The grounds on which the claim is founded." (§ 5137.)

"The action may be brought only: (a) As to the portion of the assessment claimed to be void. (b) On the grounds specified in the protest. (c) By the owner, his guardian, executor, or administrator." (§ 5139.)

"If the court finds that the assessment complained of is void in whole or in part, it shall render judgment for the plaintiff for the amount of the taxes paid on so much of the assessment as is found to be void. In such event but only where taxes are paid after the effective date of this act, the plaintiff is entitled to interest on the taxes for which recovery is allowed at a rate per centum per annum equal to the rate per centum per annum that the defendant has received, through investment or by bank deposit, on the amount allowed and recovered as taxes from the date of payment under protest to the date of entry of judgment, and such accrued interest shall be included in the judgment. The taxes paid on so much of the assessment as is not found to be void shall constitute valid taxes which, if paid after delinquency, shall carry penalties, interests and costs." (§ 5141.)

apparent that plaintiff's concession in this respect is unavoidable. Vines was the owner of and was in possession and control of the assessed property on the first Monday in March 1969. The assessment was, therefore, valid when made. (Rev. & Tax. Code, § 405; see *S. & G. Gump Co.* v. *San Francisco,* 18 Cal.2d 129, 131 [114 P.2d 346, 135 A.L.R. 595]; *Thompson* v. *Board of Supervisors,* 13 Cal.App.2d 134, 137 [56 P.2d 571].)

Sections 5136 and 5139 of the Revenue and Taxation Code also require that the party paying under protest and bringing the action be the "owner" of the property on which the tax is levied. Plaintiff, as holder of a perfected security interest, was not owner of the property assessed.

Plaintiff's action is not, therefore, a suit to recover taxes paid under protest; it is a suit for refund of taxes "erroneously or illegally collected" subject to the provision of section 5104 of the Revenue and Taxation Code which makes a claim for refund mandatory.

The right to recovery of taxes is purely statutory and is granted upon conditions. In order to recover, the conditions must be met. (*Sierra Investment Corp.* v. *County of Sacramento,* 252 Cal.App.2d 339, 346 [60 Cal.Rptr. 519].)

Defendants' conduct may also have constituted disparagement giving rise to an action for damages in tort. However, on that theory plaintiff's causes of action would be "claims for money or damages against local public entities" subject to the provisions of section 905 of the Government Code. This section also requires filing of a claim which is a statutory condition precedent to the right to bring an action. (*County of San Luis Obispo* v. *Ranchita Cattle Co.,* 16 Cal.App.3d 383 [94 Cal.Rptr. 73]; *Lewis* v. *City and County of San Francisco,* 21 Cal.App.3d 339 [98 Cal. Rptr. 407].)

Plaintiff's failure to file a claim for refund or a claim for money or damages is fatal to its right to recovery.

The judgment is reversed as to each of the defendants.

Allport, Acting P. J., and Cobey, J., concurred.